(Decided 14th May, 1869.)

JOHN T. B. DORSEY *vs.* A. B. KYLE, Trading as DINSMORE & KYLE. SAME *vs.* COMFORT W. DORSEY, Executrix of WM. H. G. DORSEY. SAME *vs.* SAME. SAME *vs.* SAME. SAME *vs.* A. J. HAMPSON. SAME *vs* CHARLES REESE, *et al.*, Trading as CHARLES REESE & CO. SAME *vs.* ALEX. O. BAUGHER, *et al.*, Trading as P. TIERNAN & SON.

*Citizen synonymous with Inhabitant or Permanent resident—Code, Art.* 10, *sec.* 4—*Attachment—Distinction between Domicil and Residence — Alien Enemy—Invalidity of Contracts with an Enemy during hostilities — Effect of the plea of Alien Enemy—Attorney—Motion ·to strike out a Judgment.*

The term "citizen," used in the formula of the affidavit prescribed by the 4th section of the 10th Article of the Code of Public General Laws, is to be taken as synonymous with inhabitant or permanent resident.

Dorsey *vs.* Kyle, *et al.*

In contemplation of the attachment law, the domicil may be in this State, while the actual residence is in another.

A person who by his own voluntary act assumed the attitude of an alien enemy to this State and to the Government of the United States, going from Maryland to Virginia during the late civil war, allying himself with the Southern cause and joining the Confederate army, cannot claim exemption from process of attachment, in behalf of antecedent creditors, against his property remaining in this State, on the ground that he was an alien enemy, and that "all legal remedies were suspended during the period of hostilities."

No valid contract can exist, nor any promise arise by implication of law, from any transaction with an enemy during hostilities, and if after the war has ceased an action is brought against a citizen upon any contract arising out of such illicit intercourse, the defendant may set up the illegality of the transaction as a defence.

Neither reason nor policy forbids judicial proceedings against an alien enemy in favor of a friendly citizen, and therefore, while an alien enemy may not sue, he may be sued at law.

The plea of alien enemy goes only to the disability of the plaintiff. It is not a matter of privilege, but a disability that suspends the right to maintain an action in the Courts of the country to which the party is an enemy.

Whenever the appearance of an attorney is entered of record, it is always considered as done by the authority of the party for whom he professes to act, and what he does in the progress of the cause is binding on the party, except in cases of fraud and imposition. If an injury be sustained thereby, the attorney must answer it in a civil action by the party injured.

Acquiescence or unnecessary delay is fatal to a motion to strike out a judgment, as Courts are always reluctant to interfere with a judgment, and especially after the lapse of the term, and where it has been executed or satisfied.

APPEALS from the Circuit Court for Howard County.

In July, 1861, the appellant, hearing of the illness of his wife, at her father's, in Winchester, Virginia, left his home in Maryland for the purpose of seeing her, intending to return in a few days. Owing to the position of the Federal and Confederate forces about Winchester, the appellant, for several

weeks, was unable to return home. About the 1st of September, 1861, upon information received from his brother, Wm. H. G. Dorsey, and numerous friends in Maryland, as well as from the many illegal arrests there made, the appellant concluded that it would be unsafe to return home, and subsequently volunteered in the Confederate cause, and remained attached to the army until the close of the war.

Attachments on warrant were issued out of the Circuit Court for Howard county against the appellant, as follows: by Charles Reese, and others, trading as Charles Reese & Co., on the 15th of April, 1862; by Alex. O. Baugher, trading as P. Tiernan & Son, on the 29th of August, 1862; by Adam B. Kyle, trading as Dinsmore & Kyle, on the 24th of September, 1862; by A. J. Hampson, on the 30th of December, 1862; and by Comfort W. Dorsey, executrix of Wm. H. G. Dorsey, on the 10th of January, 1863. They were levied on certain real and personal property of the defendant, and laid in the hands of several garnishees. In all these cases, except those at the suit of Mrs. Dorsey, executrix, where he appeared for the plaintiff only, Thomas S. Alexander, Esq., appeared for the defendant.

The defendant, in Richmond, on the 3d of February, 1862, delivered to George H. Kyle, of the firm of Dinsmore & Kyle, of Baltimore, upon the payment of $1,000, a draft on W. H. G. Dorsey for that amount, payable to the order of "Dinsmore & Kyle, Baltimore." Subsequently, on the 23d of May, 1863, the defendant, being informed by Kyle that the draft had not been paid, returned the money received for the same.

On the 14th of September, 1863, an agreement was filed in the above cases, signed by Thomas S. Alexander for the defendant and Comfort W. Dorsey, and by the attorneys for the other plaintiffs, consenting that judgments of condemnation against the real estate attached, should be peremptorily entered, and that the auditor should ascertain and adjust the manner in which the proceeds of sale of the personal estate

Dorsey *vs.* Kyle, *et al.*

(then in Court, resulting from previous orders,) should be applied. It was also agreed that judgment should be finally entered on the award of the auditor, unless exceptions should be filed within a certain time. The award was afterwards made, and all objections being waived by Mr. Alexander, for the defendant, as well as by the other attorneys, the final entries were made, and the funds paid over accordingly. There was judgment of condemnation against the property attached, and of *non pros.* against the several garnishees.

On the 19th of March, 1866, the defendant moved to strike out the judgments in all these cases, for rersons stated at the time. The reasons given in the cases of Hampson and of Reese & Co., were:

1st. That the defendant was a citizen of this State, and resided therein at the time the writ of attachment was issued.

2d. That Mr. Alexander was not authorized to act as attorney for the defendant.

3d. That Mr. Alexander having appeared for the defendant, no judgment of condemnation could be properly entered without a determination being had in the short note case.

The reasons assigned in the case of Baugher, while differing somewhat in phraseology, were the same in principle. In Kyle's case, as also in the cases of Mrs. Dorsey, additional reasons were given which need not be stated.

The motion in each case was overruled, and the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT and ALVEY, J.

*Levin Gale* and *Thomas G. Pratt,* for the appellant:

Under the circumstances attending the departure of the defendant from Maryland, and his subsequent detention, no writ of attachment could legally issue. First, because leaving with the intention of returning immediately, he was still a resident of the State of Maryland, and as such not liable

to be sued in attachment. *Lamden vs. Bowie,* 2 *Md.,* 334; *Gover, et al. vs. Barnes,* 15 *Md.,* 576. Secondly, being detained by military force, and subsequently, under the Proclamation of the President of the United States, of August, 1861, declared an alien enemy, all legal remedies were suspended during the period of hostilities. *Griswold vs. Waddington,* 15 *John.,* 57; and same case in 16 *John.,* 438; 2 *Wallace,* 419; *Connec. Ins. Co. vs. Hall, American Law Reg.,* August 1868, *page* 606.

The judgment in this case being confessed by an attorney, who, upon his own confession, had no authority from the defendant to appear for him in the several actions, is void, and cannot bind him. *Critchfield vs. Porter,* 3 *Ohio,* 518; *Griggs vs. Gear,* 3 *Gilman,* 2; *Archbold K. B. Pi.,* 26; *Merrefield's Law of Attys.,* 64.

Upon the appearance of Mr. Alexander, for the defendant, the attachment suit was stayed, and should have awaited the action of the Court in the short note case, and the confession of judgment of condemnation, was irregular and void. *Walters & Harvey vs. Munroe,* 17 *Md.,* 501.

The amount of the draft in favor of Dinsmore & Kyle, having been paid by the appellant three months before any appearance for him, or any confession of judgment, the judgment should be stricken out.

The judgments confessed by Mr. Alexander, acting as attorney for both plaintiff and defendant in the cases of Comfort W. Dorsey, were illegal, and ought to be set aside. *Anon.,* 7 *Mod.,* 47; *Berry vs. Jenkins,* 3 *Bingham,* 423; *Simon Mason's Case,* 1 *Freeman,* 74.

*James Mackubin* and *Thomas Donaldson,* for the appellees:

The appellant was a non-resident in contemplation of the attachment law of this State, and properly liable to be thus proceeded against. *Field vs. Adreon, et al.,* 7 *Md.,* 209; *Haney vs. Marshall,* 9 *Md.,* 208; *Risewick vs. Davis,* 19 *Md.,* 91.

Neither his residence in Virginia, nor his being an officer in the Confederate service, exempted his property in this State from liability for his debts.

The judgments in all of these cases (except Mrs. Dorsey's) were confessed by Mr. Alexander, as Attorney for the defendant on the docket, and were entered in the short note cases as in the garnishee cases, and the defendant is bound by his acts in the cases where he so appeared. *Henck vs. Todhunter,* 7 *H. & J.,* 275; *Munnikuyson vs. Dorsett,* 2 *H. &. G.,* 379; *Bethel Church vs. Carmack, et al.,* 2 *Md. Ch. Dec.,* 143; *Thornburg vs. Macauley,* 2 *Md. Ch. Dec.,* 425; *Kent vs. Ricards, et al.,* 3 *Md. Ch. Dec.,* 392.

The judgments in Mrs. Dorsey's cases *were not* confessed by Mr. Alexander, as attorney for the defendant, nor does he appear as such on the docket. And although the clerk may have erroneously entered them as "by agreement," which agreement did not authorize it, nevertheless, the plaintiff being *entitled* to judgments *at that term,* and even at the preceding term, and *without any agreement or confession,* the judgments should not be disturbed. *Code of Pub. Gen. Laws, Art.* 10, *sec.* 13.

These motions are addressed to the *quasi* equitable jurisdiction of the Court, and are to be determined upon consideration of all the circumstances of the case; it is always with reluctance that motions are granted, and never where there have been *laches,* or where the judgment complained of has been executed or satisfied. *Kemp & Buckey vs. Cook & Ridgely,* 18 *Md.,* 138, 139; *Montgomery vs. Murphy,* 19 *Md.,* 576; *Sherwood vs. Mohler, et al.,* 14 *Md.,* 564; *Green vs. Hamilton,* 16 *Md.,* 326.

These judgments have all been entered in strict accordance with the law. The motions to strike out were not made until two and a half years after the judgments were entered—ten months after the defendant's return to Maryland, and eight months after he had obtained "all the desired information" in regard to them.

ALVEY, J., delivered the opinion of the Court.

Upon a careful examination of the several records before us, we fail to discover any sufficient ground for sustaining the motions of the appellant to strike out the judgments of condemnation.

"Every person who doth not reside in this State, and every person who absconds, may be made a defendant in an attachment," is the provision in our law in regard to defendants in attachments, (1 *Code, Art.* 10, *sec.* 2;) and the term citizen, used in the formula of the affidavit prescribed by the 4th section of the Article of the Code referred to, is to be taken as synonymous with inhabitant or permanent resident. *Risewick vs. Davis,* 19 *Md.,* 93. It is not, therefore, every person who can claim to be a citizen of, or to have domicil in the State, that can be relieved from the process of attachment. In contemplation of the attachment law, the domicil may be in this State, while the actual residence is in another. *Matter of Thompson,* 1 *Wend.,* 43; *Frost vs. Brisbin,* 19 *Wend.,* 14; *Haggert vs. Morgan,* 1 *Seld.,* 428; and *Risewick vs. Davis,* 19 *Md.,* 96, where the New York cases here referred to are cited and approved.

That the appellant was a non-resident, within the meaning and true construction of the attachment law, we think, is clear beyond doubt. It is insisted, however, that because the appellant was in Virginia during the late war, and had allied himself with the cause of the Southern States and joined the Confederate army, he thereby became an alien enemy, and that consequently "all legal remedies were suspended during the period of hostilities."

While it may be conceded that, by his own voluntary act, the appellant did assume the attitude of an alien enemy to this State and the Government of the United States, yet we cannot for a moment accede to the proposition that all legal remedies were therefore suspended in our own Courts, as against him or his property remaining within the jurisdiction of this State. Such a proposition is as novel in jurisprudence

as it would be unjust to creditors.  There is no precedent of authority, or principle, known to us, that gives it the least sanction.  The case of *Griswold vs. Waddington*, 15 *John.*, 57, and same case in 16 *John.*, 438, in error, relied on by the appellant, does not in any manner tend to support such a proposition.  That was a case growing out of dealings and transactions that had taken place between citizens of hostile countries during the pendency of war, and in contravention of the law of the land.  And the proposition there affirmed was, that no valid contract can exist, nor any promise arise by implication of law from any transaction with an enemy during the existence of hostility; and if, after the war has ceased, an action is brought against a citizen *upon any contract arising out of such illicit intercourse,* the defendant may set up the illegality of the transaction as a defence.  This, as was shown by the elaborate discussion and great research of *Chancellor Kent,* in the case referred to, is a rule firmly established by universal authority.  But that is altogether a different proposition from the one involved in the cases before us.

Here, the contracts upon which the proceedings were taken, had an antecedent existence to the war, and were made and grew out of transactions with the appellant when he was a resident citizen of the State, and the question is, whether they can be legally enforced in the Courts of this State, in the absence of the appellant, against his property by attachment.

As a general rule, an alien enemy is not allowed to maintain suit in the Courts of the country with which he is, at the time, in hostility.  This, however, is a personal disability, of a temporary duration, and is founded upon reason and policy, and, to some extent, upon the necessity of the case.  But no such reason or policy forbids judicial proceedings against an alien enemy, in favor of a friendly citizen; and it is, therefore, asserted by good authority, that while an alien enemy may not sue, he may be sued at law.  *Bac. Abr. Alien, D.* Hence we know of no such thing as a plea by the defendant of his own alien enmity to the government in whose Courts

he is sued. The plea of alien enemy goes only to the disability of the plaintiff. It is not a matter of privilege, but a disability that suspends the right to maintain an action in the Courts of the country to which the party is an enemy. And if a party, though an alien enemy, be suable at all, it is difficult to suggest a good reason why the same proceedings cannot be had by his creditors against his property remaining within the jurisdiction of the State, that can be taken against the property of any other non-resident debtor whatever. His being an alien enemy does not make him the less a non-resident debtor. The right of his creditors to proceed by attachment was not suspended because he thought proper to assume the position of an alien enemy. All the remedies provided by law against the property of an absent or non-resident debtor, remained open to them; and if they have pursued those remedies in the mode prescribed by law, the debtor himself can make no question of their right so to do, upon the ground that he no longer remained in amity with them or their government.

As to the second ground assigned for striking out the judgments, that they had been confessed by an attorney without authority from the appellant, we think it is equally untenable as the one just considered.

By the long established practice of the Courts in this State, whenever the appearance of an attorney is entered of record, it is always considered as done by the authority of the party for whom the attorney professes to act; and whatever is done in the progress of the cause, by the attorney so appearing, is considered as done by the party, and is binding upon him. *Henck vs. Todhunter*, 7 *H. & J.*, 275. And it was said, in the case of *Munnikuyson vs. Dorsett*, 2 *H. & G.*, 378, that "the appearance of an attorney, without proof of an authority derived from a defendant, does not *per se* invalidate a judgment. If loss or injury be sustained thereby, the attorney must answer it in a civil action by the party injured." There may be cases suggested, however, of fraud and imposition,

where it would be proper, and indeed necessary, for the Court to interpose and relieve a party from the operation of a judgment, or other judicial proceeding, attempted to be fixed upon him by the act of an unauthorized attorney. But we discover no ground whatever for imputing fraud, or anything not entirely consistent with fairness and good faith, to the counsel who appeared for the appellant, and confessed judgments in these cases. It is manifest that he supposed he was acting by authority, and in the best interest of the appellant. And in regard to the judgments in the cases of Mrs. Dorsey, it is not shown that he appeared at all for the defendant in those cases. The agreement signed by him as attorney for the defendant, and Comfort W. Dorsey, had reference as well to the cases in which he had appeared for the defendant, as to the cases in which he appeared for Mrs. Dorsey; and hence he might well sign the agreement as he did, without any inconsistent relation with his clients.

It is not deemed necessary to discuss the other grounds assigned for the motions. They are clearly insufficient, in view of the facts disclosed. It appears, from the appellant's own testimony, that he heard of the proceedings against his property, in 1863, and that he did write in regard to one of the cases, and received information as to its condition. That from the summer of 1863, according to his testimony, " anybody could write a letter not on political matters, by flag of truce;" and notwithstanding this facility of communication, and with a knowledge that proceedings had been taken in one instance against his property, before he left the State, and that other creditors had, since his departure, taken proceedings to obtain payment of their debts, he made no inquiry upon the subject, and held no communication with his creditors whatever. Moreover, he returned to the State about the first of June, 1865, and the motions to strike out the judgments were not entered until the 19th of March, 1866. With such evidence of *laches* and inattention, it would be difficult in any case, however extraordinary its circumstances, if not a

question of jurisdiction of the Court, consistently with settled rules upon the subject, to interfere with a judgment. The party seeking to be relieved of it should move in the matter without delay, and as soon as practicable after knowledge of the existence of the judgment, and the circumstance of fraud or surprise, under which it was rendered. Acquiescence or unnecessary delay is fatal to motions of this character; as Courts are always reluctant to interfere with judgments, and especially after the lapse of the term, and where they have been executed or satisfied. The several judgments appealed from, in these cases must be affirmed.

*Judgments affirmed.*

(Decided 27th May, 1869.)

