Tyler *vs.* Murray.

</div>

(Decided 19th January, 1882.)

---

## ERASTUS B. TYLER *vs.* MARY A. MURRAY.

*Rule of Court. not in Record—Pleadings and Practice— Motion for Non Pros—Plea to the Jurisdiction on the ground of Non-Residence—Separate Trial of the Issue of Residence vel Non, before a Jury—Where one is Amenable to Civil Process under Art. 75, sec. 87, of the Code—Evidence.*

Where a rule of Court, requiring a motion of *non pros.* on the alleged ground of non-residence, to be made within a certain time, is not found in the record sent to this Court, this Court presumes that the Court below acted rightly and in accordance with its rules, in overruling such motion as not made within time.

To an action brought in the Court of Common Pleas by M. against T., the defendant pleaded in abatement, to the jurisdiction, that he resided in Baltimore County, and that there had been no *non est* returned on a summons issued in said county against him. M. traversed the facts alleged in the plea, which she prayed might be enquired of by the country. T. joined issue on M's traverse. T.

afterwards moved that the issue joined, should be submitted to the Court without jury. HELD:

1st. That the motion was properly overruled; Art. 75, sec. 87, of the Code, providing, that no person shall be sued out of the county in which he resides, until the sheriff or coroner of the county in which he resides, shall have returned a *non est* on a summons issued in such county, the question of jurisdiction and privilege may be raised either by motion for *non pros.* or by plea in the nature of abatement; that a motion of *non pros.* was for the Court, but where plea was interposed and traversed, it was for the jury, unless by agreement it should be decided by the Court.

2nd. That T. having pleaded to the jurisdiction, which confessed nothing, M. was not entitled to state her grievances to the jury, offer proof of them, and have an assessment of damages therefor, until the preliminary question of jurisdiction should have been passed upon and determined by a jury empaneled for the trial of the issue of residence *vel non;* that if the verdict should be against the allegation of non-residence, the judgment would be, that the defendant answer over, when he could demur to the *narr.* or traverse its allegations, and the case would then be tried on the merits, before a jury empaneled for that purpose; and that if, after trial, the verdict and final judgment should be against him, he could appeal, and alleged errors in the rulings of the Court below, in either trial, would be open for review.

One is amenable to civil process, under Art. 75, sec. 87, of the Code, in the county or city where he has his permanent fixed home, whither he has the intention of returning, and of remaining there, after temporary absence on account of business or otherwise.

M. having announced at the trial that she had closed her testimony on the subject of residence, offered, in writing, by competent testimony to prove the amount of damages claimed in the *narr.* T. objected to the proposed offer, and moved the Court below to instruct the jury, that there was no legally sufficient evidence to sustain the issue joined on the part of M. The Court below overruled the motion and objection. HELD:

That though it was error to permit M. to offer evidence of the assault and damages; the question as to whether there was legally sufficient evidence as to residence, for the jury to find for M., there being evidence on both sides, was properly for the jury to determine.

---
Tyler *vs.* Murray.
---

APPEAL from the Circuit Court for Howard County, on removal from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial seven exceptions were taken. The substance of the first, second, third and fourth exceptions, is stated in the opinion. In the present aspect of this case, it is not necessary to set forth the fifth and sixth exceptions; the seventh is as follows:

The evidence on both sides being closed, the plaintiff offered four prayers:

1. That if the jury find from the evidence that the defendant, in the month of May, in the year 1877, and for several years immediately preceding that time, had a place of business in the City of Baltimore, where he in person attended to business, and that in said month and year he was appointed postmaster for said city, and that in the month of June, 1877, he took possession of the post office in said city, and that he has held the said office and performed the duties thereof, ever since he took possession of the same, and that during said time he has been in daily attendance at said office, from about 7 or 9 o'clock in the morning until about 4 or 6 o'clock in the evening, except only when he made four or five, or even more brief visits of pleasure, or on business, then he had a business residence in said city, and was liable to be sued therein, in the month of December, 1879, when this suit was brought, and their verdict should be for the plaintiff.

2. The jury are instructed that all the evidence offered by the defendant, except so much thereof as relates to his place of residence, is to be considered by them only as affecting the amount of damages which they may award the plaintiff, and not as proving or tending to prove that the defendant did not commit the acts on his part alleged in the declaration—these acts being confessed by the defendant's pleadings.

3. If the jury shall find for the plaintiff, upon the issue joined on the defendant's plea of non-residence, they are at liberty in fixing the amount of damages to be given by their verdict, to take into consideration all the facts and circumstances in evidence connected with the commission of the assaults and batteries set forth in the declaration, and referred to in the testimony of the plaintiff, the outraged feelings of the plaintiff, the mental agony suffered by her, if the jury so find the plaintiff's age, rank and condition in life, and those of the defendant, and all the circumstances attending the said assaults, and to award by their verdict such exemplary damages as the circumstances of the case, in the judgment of the jury, may require.

4. That if the jury shall find from the evidence, that from the time of his appointment as postmaster of Baltimore, in the year 1877, as testified to by him, the defendant had an office in Baltimore City, where he daily attended for the discharge of his official duties of postmaster, from the hours of 9 o'clock a. m., to 5 o'clock p. m.; and shall further find, that from his said appointment to the date of the institution of this suit, he continued so to attend at his office, and that in the spring of 1877, he removed with his wife to 443 Madison avenue, and declared his intention of retaining his residence in said city, and that it was under his order and direction that the entry of the defendant's residence in the directory of 1878, was made, which has been offered in evidence, if the jury find the same, and that the same entry was continued in the directory of 1879, under the order and directions of the defendant, and was not changed until after the institution of this suit, then it is competent for the jury to infer such facts that the defendant had such a residence in Baltimore City, as would render him amenable to the process issued in this cause, although the defendant did retain his property in Baltimore County, and did occupy the same in the same

manner as before his said appointment, except when he was at the said house, 443 Madison avenue.

The Court, (HAYDEN and HAMMOND, J.,) granted the first of said prayers in connection with an instruction given by the Court in lieu of the defendant's rejected prayers; rejected the second of said prayers, and gave an instruction in lieu thereof.

Instruction of the Court granted in lieu of the plaintiff's second prayer:

"The jury are instructed, that if they find for the plaintiff on her first prayer, under the pleadings in this cause, the defendant has so far confessed the acts complained of in the plaintiff's declaration; that they can only consider the facts and circumstances proved in the case, on the part of the defendant, except that which relates to his place of residence, in determining the credibility of the plaintiff as a witness in the case, and in estimating the amount of damages they may award by the verdict."

The Court granted the third of said prayers as presented, and rejected the fourth of said prayers.

And the defendant offered eight prayers, as follows:

1. If the jury are satisfied from the evidence, that the defendant resided in Baltimore County, and did not reside in the City of Baltimore at the time of the institution of this suit, to wit, on the 18th day of December, 1879, then their verdict must be for the defendant.

2. That to constitute a change of residence, there must not only be a declaration of intention to change, but there must be an actual abandonment of a previous residence, before another can be acquired, and if the jury shall find from the evidence, that the defendant had his actual home and residence, claiming the same as such in Baltimore County, at or before the time of his appointment as postmaster of Baltimore City, and that he did not actually change his said residence from Baltimore County to Baltimore City, but continued with his family to use and occupy his said

dwelling place in Baltimore County, as and for his home as before, and that he was so occupying, using and claiming it as his home before and at the time of the institution of this suit, then the plaintiff is not entitled to recover upon the issues joined, although the jury may further find that at and before the institution of this suit, the defendant held the office of postmaster for Baltimore City, under the United States Government.

3. That to constitute a change of residence, there must not only be a declaration of intention to change, but there must be an actual abandonment of a previous residence before another can be acquired, and if the jury shall find from the evidence that the defendant had his actual home and residence, claiming the same as such, in Baltimore County, at or before the time of his appointment as postmaster of Baltimore City, and that he did not actually change his said residence from Baltimore County to Baltimore City, but continued with his family to use and occupy his said dwelling place in Baltimore County, as and for his home as before, and that he was so occupying, using and claiming it as his home before and at the time of the institution of this suit, then the plaintiff is not entitled to recover upon the issues joined, although the jury may further find, that at and before the institution of this suit, the defendant held the office of postmaster for Baltimore City, under the United States Government, even though the jury may further find, that the defendant declared to one or more persons that he would change, or had in fact taken up his residence at No. 443 Madison avenue, within the City of Baltimore.

4. That the fact that the defendant was, at the time of the institution of this suit, the postmaster of the United States, for the City of Baltimore, and that in the discharge of the duties of said office, he was actually in the City of Baltimore daily, during the hours necessary for the discharge of the duties of the office, to wit: from seven or

eight o'clock, a. m., to five or six o'clock, p. m. ; nevertheless, said facts do not constitute said defendant a resident of the City of Baltimore, so as to make him amenable to the process in this cause instituted and sued out; provided, the jury shall further find that the defendant lived at his place, called "Rosedale," in Baltimore County, with his wife, family and servants, lodging, eating and sleeping there regularly, and voting in said county, and being a registered voter in said county, and the while using and claiming the said dwelling in Baltimore County, as and for his actual home and residence, and at the time of the institution of this suit, and for a long time prior thereto.

5. That if the jury should find for the plaintiff upon the issue joined, that such finding is not by construction of law, nor in fact an admission by the defendant of committing any particular assault and battery, and before the jury can assess damages against the defendant by reason of any one or more of the specific acts of assault and battery described by the plaintiff in her evidence, the jury must be satisfied that the same or some one of them was actually committed by the defendant.

6. That the jury should disregard all evidence offered by the plaintiff, tending to prove admissions made by the defendant, that he had changed his residence from Baltimore County to Baltimore City, or of his intention so to do; if the jury shall find that said admissions were made at a period of time, several months prior to the institution of this suit, unless they shall further find, that the defendant did actually remove to Baltimore City, prior to the institution of this suit, and resided there at the time of the institution thereof.

7. That if the jury shall find for the plaintiff upon the issue joined, that such finding does not operate by construction of law, nor as matter of fact, as an admission by the defendant of the particular acts of assault and battery, which were testified to by the plaintiff in her evi-

dence before the jury, but only that some assault was committed without any concession or admission of any of the facts and circumstances accompanying said assault, thus by construction or operation of law conceded, and before the jury can award damages against the defendant by reason of any one or more of the specific acts of assault and battery, as deposed to by the plaintiff, they must be satisfied that the same, or some one of said specific assaults were actually committed by the defendant, and that the constraint of law upon them, in respect to the award of damages, in case they find for the plaintiff, upon the issue joined, does not extend beyond the allowance of nominal damages.

8. That there should be excluded from the consideration of the jury all the evidence of the plaintiff, the same having been taken subject to exception, tending to establish the several alleged assaults and batteries, by her particularized, as having been made by the defendant, to wit: the assault and battery, which is alleged to have occurred some time in July, 1877, and also the three several assaults and batteries alleged to have occurred during the spring and summer of 1878, as detailed by her upon the witness stand, and each and every of said several assaults and batteries.

The Court granted the seventh of said prayers, and rejected each and all of the others, and gave an instruction in lieu of the first, second, third, fourth and sixth, so rejected, which was as follows:

"If the jury find from the evidence that the defendant, in the year 1869 or 1870, dwelt at Rosedale, in Baltimore County, and that he has continued to dwell there ever since that time, with his family and servants, lodging there, and taking his meals with his family, and, from time to time, receiving the visits of, and entertaining his friends there, and claiming said place to be his residence, and that from the year 1870, he has voted at elections in

said county, then the defendant resided in Baltimore County, and did not reside in Baltimore City in December, 1879, when this suit was brought, and their verdict should be for the defendant, unless the jury find for the plaintiff on her first prayer.

" But if the jury do not find for the plaintiff on her first prayer, then, in considering the above and foregoing instruction, they will dismiss all evidence offered by the plaintiff, tending to prove declarations or admissions made by the defendant, that he had changed his residence from Baltimore County to Baltimore City, or of his intention so to do, if the jury shall find that said declarations or admissions were made at a period of time, several months prior to the institution of this suit, unless they shall further find that the defendant did actually remove to Baltimore City, prior to the institution of this suit, and resided there at the time of the institution thereof."

And to the action of the Court in granting the said prayers of the plaintiff, and to the giving of said instructions by the Court, and to the rejection of the said prayers of the defendant, the defendant excepted; and the verdict and judgment being for the plaintiff, the defendant appealed.

*Henry Stockbridge,* and *William M. Merrick,* for the appellant.

Upon the reason and convenience of the thing, and upon the authority of the intimations of this Court in the case of *Gittings vs. The State, use of Ockerme,* 33 *Md.,* 464, the Court wherein is joined the issue upon the plea of non-residence, is the proper tribunal to decide the question of its jurisdiction upon the issue of residence *vel non.*

Nothing whatever can be done by a Court in any case till it is settled whether it has or has not jurisdiction of the case; and that is a point to be determined by the

Court itself, and cannot be submitted to a jury. It is an inquiry preliminary, and if decided in favor of the jurisdiction, the judgment must be *respondeat ouster*, and the defendant allowed to plead to the merits. *Foxwist, et al. vs. Tremaine,* 2 *Williams' Saunders,* 213 ; *Brown vs. Webber,* 6 *Cush.,* 564 ; *Sheppard vs. Graves,* 14 *How.,* 509, 510; 5 *Rob. Practice,* 19 *e.'s.;* 1 *Tidd's Pr.,* 638 ; *State, use, &c. vs. Gittings,* 35 *Md.,* 174.

A plea to the jurisdiction is a very different thing from a plea in abatement, and it is not subject to the same rules. *Stephen's Pleading,* 46, 394, 396, and *appendix XXVII.*

Second, that like the case of proving the declarations of an agent after *prima facie* proof of agency has been submitted to and passed upon by the Court, the question of damages should not be opened until the Court has legal *prima facie* evidence, not merely a *scintilla,* to support the jurisdiction. If under such a plea the defendant must come prepared to meet the proof on the cause of action, he is practically deprived of all benefit of the plea of nonresidence.

Third, that this is not an odious plea, to be discountenanced by a course of practice, repugnant to the complete protection it was designed to afford, nor the statute one so repugnant to justice that it is to be repealed by judicial construction.

Fourth, that the facts given in evidence, and shown on the record, were not such as were reasonably sufficient proof of the issue to warrant the plaintiff in proceeding with her proof of damages, or to justify the Court in permitting her to do so.

Upon the main question of the proper construction of section 87 of Article 75 of the Code, (Rev. Code, Article 64, sec. 5,) the defendant relies upon the terms of the statute itself, and the uniform interpretation of it derived from the practice of the State, and the general opinion of

the profession from the adoption of the law by Act of 1801, ch. 74, secs. 11 and 12, down to the present time. He is amenable to civil process only at his permanent fixed residence, that is, his *home*, to which he is bound by the ties of family and of the fireside, so that he returns to it and remains there after temporary absence on business or otherwise. *Hamilton vs. Hardesty,* 32 *Md.,* 348; *Gittings vs. State, use of Ockerme,* 33 *Md.,* 458; 35 *Md.,* 169; *Latrobe vs. M. & C. C. of Balt.,* 19 *Md.,* 13; *Risewick vs. Davis, Garn.,* 19 *Md.,* 93, etc.; 1 *Kent's Com.,* 75, *et seq.; Lawrence's Wheaton,* 394, *et seq.,* 559, *et seq.; Adreon vs. Field,* 7 *Md.,* 209; *Fouke vs. Fleming and Douglass,* 13 *Md.,* 411; *Barr vs. Perry,* 3 *Gill,* 326; *Carroll vs. Tyler,* 2 *H. & G.,* 54; and *Hall vs. Gittings,* 2 *H. & J.,* 380.

But under the 87th sec. of Art. 75, there is no necessity for any construction beyond the letter of the statute itself in aid of justice, because the statute itself furnishes the easy alternative, viz., that upon the return of *non est* in the county where the defendant resides he may be sued whereever found. This provision for the contingency of the defendant's being absent from the place where *"he lives"* manifestly excludes the idea of a double residence, as also do the other terms of the statute; its words are, *"no person shall be sued out of the county in which he resides, until, &c.;"* the county is one county; it does not say the county or *counties;* it means to designate one place in which every person may be sued, and to protect him from being sued in every other.

Residence and inhabitancy are usually synonymous and *where* one *"resides"* means a personal presence in a fixed or permanent abode—one's dwelling house and home in contradistinction to any place of business, trade or occupation. Sojourning or being in a place temporarily and without the intention of remaining, is not to reside there. 2 *Bouv. L. Dic.,* 252; *Webster's Dic.,* 1124, under *"to reside;" Walker vs. Bank, &c.,* 15 *Ohio Rep.,* 299; *Ab-*

Tyler *vs.* Murray.

*ington vs. North Bridgewater,* 23 *Pick.,* 177; *Lambe vs. Smythe,* 15 *Mee. & Wel.,* 433; *Blanchard vs. Stearns,* 5 *Met.,* 303; *Holmes vs. Greene,* 7 *Gray,* 299; *Whithorn vs. Thomas,* 7 *Man. & Gr.,* 7; *United States vs. The Penelope,* 2 *Peter's Admiralty,* 448; *Thorndike vs. City of Boston,* 1 *Met.,* 246; *Sears vs. City of Boston* 1 *Met.,* 250; *Roosevelt vs. Kellogg,* 20 *John.,* 210; 2 *Kent's Com., (6th Ed.,)* 431, *note;* (10th *Ed.,*) 574, *note; Story's Con. of Laws,* secs. 42–46.

*Ernest Riall,* and *Charles J. Bonaparte,* for the appellee.

The first exception presents no question for review, as the rule of Court is not in the record. *Cherry vs. Baker,* 17 *Md.,* 75; *Morrison vs. Welty,* 18 *Md.,* 169; *Wash. & Balto. T. P. Co. vs. State,* 19 *Md.,* 241.

If, however, the question were properly raised, it would be *res adjudicata* in view of *State, use of Ockerme vs. Gittings,* 35 *Md.,* 173., and *Yoe vs. Gelston,* 37 *Md.,* 233.

It may be fairly doubted whether the latitude to be allowed counsel in their opening statement is not so much, in the discretion of the Court, as to be no subject of appeal. This view is sustained at least by analogy in *Davis vs. Calvert,* 5 *G. & J.,* 269, and, the question of practice being apparently new and not without interest, it is submitted to the Court. But in considering this exception it need hardly be determined. The defendant sought to keep from the jury the statement of evidence as to damage, as he had previously sought to have the Court determine the issue joined on his plea of non-residence; because he contended that this issue, if found against him, would not be decisive of the case; that he should, after a judgment of *respondeat ouster,* be allowed to plead to the merits, or at least, obtain an inquisition to assess the plaintiff's damages. The position of the plaintiff, sustained by both the lower Courts, was that the defendant, having staked his defence on this one plea,

was bound by a verdict upon it, just as if he had pleaded
limitations, accord and satisfaction or any other plea
*purely* in confession and avoidance to the merits; that
the same jury which determined the issue of residence
*vel non,* must also, if they found for the plaintiff, assess
her damages; and for this reason, if for no other, the
former duty could not, except by consent, be assumed by
the Court; and they were entitled to know what evi-
dence bearing on the *quantum* of damages would be sub-
mitted to them. Undoubtedly the defendant could not
*simultaneously* rely on his plea in abatement and plead
to the merits, since by the latter defence he would waive
the former; but this arises from the repugnance of the
law to dilatory defences, especially when found to be
false in fact, and in nowise impugns the axiomatic prin-
ciples that in actions at common law, the jury must try
all issues of fact, whatever their nature or number, and
that the same jury must also assess the plaintiff's dam-
ages. *McLaughlin vs. DeYoung,* 3 *G. & J.,* 6; 32 *Md.,*
*supra,* 352; 1 *Chitty on Pl.,* 7th *Ed.,* 481, 482; *Evans'*
*Pr.,* 237, 238, 239; *Poe on Pl. and Pr.,* 504, 506, 508;
2 *Wms. Saunders,* 210 *g., n.* 3; *Stephen on Pl.,* 9th
*Am. Ed.,* 106*, 107*; *Archbold's Civ. Pl.,* 306; *II Arch-*
*bold's Pr.,* (2nd *Ed.,*) 34; *Archbold's Forms,* 292, 296;
*Gilbert's Pr.,* 53; *Tidd's Pr.,* 9th *Ed.,* 640; *Gould's Pr.,*
300; *Bowen vs. Shapcott,* 1 *East,* 544, *Eicharn vs.*
*Leillaitre,* 2 *Wils.,* 368; *Bullen & Leake, Prec. of Pl.,*
476, *n.;* 2 *Chitty's Pr.,* 12th *Ed.,* 916.

The defendant's motion requires this Court to construe
the word "resides" in Art. 64, sec. 5, of the Code of 1878,
(Art. 75, sec. 87, of the Code of 1860;) but this question
can be more conveniently considered in connection with
the plaintiff's first prayer. In any event, however, the
motion was rightly overruled, because the burden of proof
on the issue joined was on the defendant. *Horner vs.*
*O'Laughlin & Maulsby,* 29 *Md.,* 465; *Shultz vs. Houck,*

*Ex'r,* 29 *Md.,* 24, 27; *Bell vs. Kennedy, L. R.,* 1 *Sc. & Div., App.,* 307; *Desmare vs. U. S.,* 3 *Otto,* 605.

The plaintiff's *first* prayer. "The word residence is equivocal, and may mean either" of several different things, "according to the subject-matter." (2 *H. & McH.,* 53.) Sometimes it is nearly or quite synonymous with "domicile" or "home," as, under the laws of this State, for purposes of voting, paying taxes, and testamentary administration; but for other purposes it has had wholly different constructions placed upon it by this Court. Thus, merely transient and temporary presence has been considered "residence," under the terms of Act of 1766, ch. 14, in *Sim & Lee's Lessee vs. Deakins,* 2 *H. & McH.,* 46, and *Hall vs. Gittings' Lessee,* 2 *H. & J.,* 380, 389; under the terms of Act of 1779, ch. 8, in *Bryden vs. Taylor,* 2 *H. & J.,* 396, 398; under the terms of Act of 1809, ch. 168, in *Carroll vs. Tyler,* 2 *H. & G.,* 54; and under the terms of Act of 1856, ch. 154, in *Fouke vs. Fleming & Douglas,* 13 *Md.,* 392.

Likewise, one retaining his "home" and "domicile" within the State, has, notwithstanding, been held to be a "non-resident," under the terms of Art. 65, sec. 25, of the Revised Code. *Dorsey vs. Dorsey,* 30 *Md.,* 522, 530; *Dorsey vs. Thompson,* 37 *Md.,* 26.

And "a person who doth not reside in this State," under those of Art. 67, sec. 2. *Dorsey vs. Kyle,* 30 *Md.,* 512, 518.

While "citizen," in the Act of 1795, ch. 56, being held synonymous with "inhabitant" or "*permanent* resident," was construed as referring to a "business residence," which might be different from the "domicile" or "home." *Field vs. Adreon,* 7 *Md.,* 209; *Risewick vs. Davis,* 19 *Md.,* 82, 96.

A plaintiff may also be made to give security for costs under Act of 1801, ch. 74, sec. 9, although his "domicile" is in Maryland. *Hanry vs. Marshall,* 9 *Md.,* 208.

Moreover, the distinction here taken between "domicile," or "home" and "residence," and the elasticity of meaning ascribed to the latter term, are approved by the best considered decisions in other States. *Putnam vs. Johnson,* 10 *Mass.,* 488; *Exchange Bank vs. Cooper,* 40 *Mo.,* 169; *Tazewell Co. vs. Davenport,* 40 *Ill.,* 197; *Smith vs. Croom,* 7 *Fla.,* 81; *Frost vs. Brisbin,* 19 *Wend.,* 14.

"Resides," as used in sec. 5. of Art. 64, of the Revised Code, has never been construed by this Court. *State, use of Ockerme vs. Gittings,* 35 *Md.,* 171, but the "subject-matter" of that section is unquestionably suits at law. In determining, therefore, whether a "business residence," as defined in the plaintiff's first prayer, fulfils its exigency, this Court will consider:

*First.* Whether process can be more certainly and conveniently served on a defendant, circumstanced under the hypothesis of this prayer, in the county where he does business, or in that where he sleeps? for, since a defendant is "out of the State," for purposes of suit, when he is "beyond reach of process,"—*Maurice vs. Worden,* 52 *Md.,* 283, 292,—he must surely, for the same purposes "reside" where he *can* be summoned, and not where he *cannot.* As the sheriff does not serve process at night, the answer to this question cannot be doubtful.

*Second.* Whether such a defendant can the more conveniently attend Court, in a jurisdiction where he is habitually, and as a matter of official duty, from about 7 to 9 a. m., until about 4 to 6 p. m., or in a jurisdiction where he passes the hours of darkness? Surely there can be no difference of opinion as to this.

*Third.* Inasmuch as "the trial of facts where they arise, is one of the greatest securities of the lives, liberties and estate of the people." *Bill of Rights, Art.* 20.

*Fourth.* Whether, in fine, just claims are more likely to be defeated and fraudulent claims to be encouraged by construing "resides," in this section, as equivalent to

"sleeps and has his family," or as the Court below construed it?

There is no doubt that a man may have a "forensic domicile," or in other words, be liable to suit in two places, and equally unquestionable that he may have two "residences" for the same purpose. *Dicey on Domicile,* 76, *supra; Greene vs. Greene,* 11 *Pick.,* 410.

The words of this statute cannot be given the sense contended for by the appellant, unless it is admitted to be impossible to sue a non-resident of this State in any Maryland Court, or else a varying sense is given arbitrarily to "reside." *Evans' Prac.,* 84.

The purpose of the old laws codified in sec. 88, of Art. 75, of the Code of 1860, was to prevent the arrest, on civil process, of inhabitants of this State where they could not conveniently give bail, and were consequently liable to imprisonment. Compare: *Act of* 1714, *ch.* 4, *Preamble, and sec.* 2, *in Bacon's Laws of Maryland; Act of* 1728, *ch.* 24, *Preamble, and secs.* 2 *and* 3, *in same; Act of* 1796, *ch.* 43, *secs.* 14 *and* 15, *in* 2 *Kilty's Laws of Md.; Act of* 1802, *ch.* 74, *secs.* 11 *and* 12, *in* 1 *Dorsey's Laws of Md.,* 461; *Gardner vs. Jenkins,* 14 *Md.,* 58; *The Cape Sable Co's Case,* 3 *Bl.,* 657.

Since, however, by the abolition of arrest on civil process and imprisonment for debt, the objects of this law have been rendered unimportant, it is reasonable to consider its practical working, since the separation of Baltimore City from Baltimore County, has rendered the case of this defendant a typical, though aggravated one, of many thousands of the city's business inhabitants.

The decision of the Court of Common Pleas, in *Ockerme's Case, supra,* which this Court was unable to review, has unfortunately fixed the practice of part of the city Courts. Its effects have been:

*a.* To greatly limit and impede the beneficial workings of the statutes intended to facilitate the speedy collection

of undisputed debts in the city, and especially the Act of 1864, ch. 6—laws indispensable to the well being of a commercial community.

*b.* To enable many dishonest persons to defeat by limitations just claims, on which suits had been first brought in the city, through the perfectly excusable ignorance or mistake of the plaintiff or his counsel as to the debtor's dwelling place—a locality often constantly changed, through fear of distraint.

*c.* To expose many plaintiffs to the unjust payment of costs, and other expenses, often much greater, because they exhibited just demands in what ought to be the proper forum.

*d.* To annoy many honest defendants and disinterested witnesses, by compelling them to attend, and often for many days await, at a distance from their places of business, and to the interruption of their lawful avocations, the trials of suits at Towsontown, which, but for the apprehension of this frivolous defence by the plaintiff's counsel, would have been brought, to the great convenience of all parties, in the city.

Since all suitors retain the constitutional privilege of removal, exercised by this appellant, his counsel are challenged with confidence to point out how this construction of the law in question, can inflict on a meritorious defendant, the least possible hardship.

IRVING, J., delivered the opinion of the Court.

The appellee sued the appellant in the Court of Common Pleas, Baltimore City, for assault and battery; alleging, in a single count, in her *narr.* that " the defendant on divers days and times assaulted and beat the plaintiff, whereby she was greatly damaged." On the return of the writ the appellant in his proper person *pleaded,* " that he inhabited, dwelt and resided in Baltimore County, and that there had been no *non est* returned on a summons

issued in said Baltimore County against him." To this a replication was filed by the plaintiff, first, directly traversing the facts alleged in the plea, which she prayed might be enquired of by the country; and secondly, a special replication which, having been demurred to and the demurrer sustained, forms no part of this inquiry. The appellant joined issue on the appellee's traverse which concluded to the country. Afterwards, appellant in person moved the Court to enter judgment of *non pros.* against the plaintiff, for the same reasons stated in his plea. To this objection was made by the plaintiff's counsel, because the motion "was not filed in time under Rule No. 8 of the Court." The Court sustained the objection for the reason stated: and this action forms the point of the first exception. The Rule No. 8 not having been put in the record, we are bound to presume, that the Court acted rightly, and in accordance with its rules. *Cherry vs. Baker,* 17 *Md.,* 75; *Morrison vs. Welty,* 18 *Md.,* 169.

The second exception was to the overruling the defendant's motion, that the issue joined upon the first replication to the defendant's plea, should be submitted to the Court without the aid of a jury. In this ruling the Court of Common Pleas committed no error. The Code, Art. 75, sec. 87, provides, that "no person shall be sued out of the county in which he resides, until the sheriff or coroner of the county in which he resides shall have returned a *non est* on a summons issued in such county." By several decisions of this Court it has been settled, that the question of jurisdiction and privilege, arising in any case on this provision of the Code, may be raised either by motion for *non pros.* or by plea "in the nature of a plea of abatement." *Hamilton vs. The State, use of Hardesty,* 32 *Md.,* 352; *Gittings vs. State, use of Ockerme,* 33 *Md.,* 463. By the case last cited it was determined, that when the question was presented by a motion for a *non*

*pros.* the enquiry was made before the Court, without the intervention of a jury, and that such practice was not obnoxious to any constitutional objection because of its infringing upon the right of trial by jury. Whether a jury trial may be had when the question is raised by plea, in the nature of a plea in abatement, does not seem to have been before raised in this State. The Court in the case of *Gittings vs. The State, use of Ockerme,* 33 *Md.*, expressly decline to say what ought to be allowed in such case, and cannot be taken, as the counsel for appellant insist, to have made an intimation adverse to the right of jury trial in such case, when craved. In *Anderson vs. Garrett,* 9 *Gill,* 120, there was a plea interposed, and it was disposed of by the Court; but it must have been done by consent; for there appears to have been *no traverse* of the allegation of the plea by way of replication with conclusion to the country, and a joinder of issue; and the case was submitted to the Court on the plea denying jurisdiction, upon proof taken before the *Judge* in an application for *Habeas Corpus.* This case, therefore, settles nothing, except that such plea *may be* decided by the Court without a jury, *if the parties agree ;* and does not certainly decide that the parties may not have a jury for the decision of the questions of fact on which the plea rests. In the case at bar, the appellee traversed the appellant's plea, and prayed that the same might be inquired of by *the country.* The appellant accepted the issue, so presented for trial by jury, and joined in it. Nothwithstanding the appellant might have avoided a trial by jury, on that question, by electing in proper time, a motion of *non pros.,* it does not follow, that when he has elected to plead instead of moving for *non pros.,* and that plea has been replied to by a direct traverse concluding to the country, on which he joined issue, that then, as a matter of right, he may have that issue, *made for a jury,* tried before the Court, against the will of his adversary. We

Tyler *vs.* Murray.

think the Court of Common Pleas adjudged rightly. He had made his election and was bound by it; and the issue on his plea was properly allowed to go to a jury.

In the first volume of *Chitty on Pleading, page* 445, it is distinctly stated that if the replication to the plea to the jurisdiction denies the facts alleged, the *conclusion* is to the country. He recites numerous and valuable volumes of precedents to support his statement of the practice. In *Harris' Entries,* 270, we find the precedents of our own State sustain the same practice. The *conclusion* thus universally adopted, unerringly indicates that the facts alleged in support of the plea, are triable by a jury; and that the Court only pronounces judgment for the defendant, or of *respondeat ouster,* in favor of the plaintiff, as the finding of the jury requires. *Mr. Poe* in vol. 1 of his work on *Pleading and Practice, p.* 503, states this to be the practice in this State, unless the parties assent to the trial before the Court. We can find no authority for refusing a jury trial where the issue is made up for it; and we can see no good reason why the practice should not prevail of granting it.

The third bill of exceptions, and the eighth prayer of the defendant, which was rejected by the Court, and is set out in the seventh bill of exceptions, present *substantially* the same question, namely, whether the plaintiff was entitled to state her grievances to the jury, offer proof of them, and have an assessment of damages therefor, until the question of jurisdiction had been fully passed upon and determined. After careful consideration of this question, and examination of numerous authorities we are satisfied that the learned Court which decided the question below, has fallen into error.

A plea to the jurisdiction, though denominated a plea in abatement, differs from it in some particulars. It partakes also sometimes, as in this case, of the character of a a plea of privilege. *Chitty* and *Stephen,* in their works

upon *Pleading*, treat of this plea under a special head, and as differing from an ordinary plea in abatement. Ordinary pleas in abatements, are pleaded by an attorney after appearance. Pleas to the jurisdiction must be put in before imparlance; and must be pleaded by the defendant in person. They cannot be pleaded by attorney, for that requires application to the Court for leave to imparl, and would submit to the jurisdiction. *Bacon's Abridgment, title Abatement*, 1 *and* 2; 5 *Rob. Pr.*, 7. Because it is a denial of jurisdiction; it is not necessary to say "he defends force, injury, &c." in the plea. 5 *Rob. Pr.*, 7. A plea to the merits and to the jurisdiction at one and the same time are so inconsistent, that a plea to the merits is a waiver of the plea to the jurisdiction. In Supreme Court of the United States, in *Sheppard vs. Graves*, 14 *Howard*, 509, it is so decided; and the Court says, "it has ever been received as a canon of pleading, that matters which appertain solely to the jurisdiction of a Court, or the disabilities of the suitor, should *never be blended* with questions which enter essentially into the subject-matter of the controversy." "All defences involving inquiries into that subject-matter imply, may admit the competency of the parties to institute such inquiries, and the authority of the Court to adjudicate upon them. Hence it is that pleas to the jurisdiction or in abatement, are deemed inconsistent with those which appertain to the merits of the cause; they are tried upon different views, and result in different conclusions." The case of *Sims vs. Hundley*, 6 *Howard*, 1, expressly affirms the common law principle of pleading, that the question of residence, or right of the parties to sue, cannot be inquired into under the general issue. If the party cannot be permitted to defend himself, and appear by attorney to do it, while he is denying the jurisdiction of the Court, and that is undetermined; it is most illogical and unjust for the Court, while inquiring into the question of jurisdic-

tion, to assume jurisdiction over the subject-matter, and to decide that by denying jurisdiction he had confessed the charge in the *narr.*, and to proceed to assess the damages at one and the same time, that the questions of fact on which jurisdiction depends, are being settled. Judge DANIEL, in *Sheppard vs. Graves*, most forcibly and convincingly says, that " if it could be imagined that the plea to the jurisdiction and the plea to the merits could be regularly committed to the jury at one and the same time, the verdict might involve the following *absurdities.* Should the verdict be for the plaintiff, the judgment would be, as to the defendant, on one issue that he answer over; and as to the other, that he pay the debt, as to the justice of which he was to answer over." The present case illustrates the necessity for a separate inquiry, even more strikingly; for in the case put by Judge DANIEL, the party would be allowed to make his defence on the merits, and the inconsistency would only be in the judgment entered. Here, there was no plea to the merits, and because he did not do that which he could not do without admitting jurisdiction, he was treated as if he confessed on the merits; *or as* if, he was under judgment by default, which the Court could not render ; and the question of jurisdiction and assessment of damages was settled by one and the same verdict. Practically, it was not only denying the defendant the benefit of his plea, to the jurisdiction ; but it was denying him regular trial on the merits. Verdict was for the plaintiff, and judgment was entered, not of *respondeat ouster*, but for damages assessed and the costs. All authorities agree that the judgment on the plea to jurisdiction, when against the defendant, is that he shall answer over. The necessary consequence of the Court's ruling in this case, was the entry of judgment as made, and the defendant was denied his privilege of answering over. The application of the rule of pleading, that what is not denied is confessed

to a case like this, was erroneous. The question presented was like that made by demurrer, whether he was called on to plead at all. While that was pending he was under no rule to plead, and the Court's right to make him plead was the very question for trial. The appellant had the right to make that plea, and raise that point, and was as much entitled to have that settled *before* being required to plead, or go to trial on the merits; as if he had demurred to the *narr.* In 1 *Sumner,* 578, Judge STORY says, the question of jurisdiction is a *preliminary one,* and must be taken by plea. He further says, " all pleas to the jurisdiction, are objections to entering into the *litis contestatio,* and they *must and ought to precede* the *litis contestatio.*" It would seem that this question was hardly open in this Court, after what was said in *State, use of Ockerme vs. Gittings,* 35 *Md.,* 174. In that case the Court below had refused a motion for judgment by default, pending the question whether the Court had jurisdiction by reason of alleged non-residence of the defendant; and this Court said " the Court below was clearly right, because the question of jurisdiction having been made, it was *preliminary* to *all* others."

To render judgment by default, would have been an exercise of jurisdiction, which the Court said could not be done until jurisdiction was affirmatively determined to be possessed by the Court. If it was unwarrantable for the Court in that case, to entertain a motion for judgment by default, it was not less so in the case at bar for the Court, pending that question, to adjudge the defendant to have confessed the grievances charged, by pleading a want of jurisdiction, and failing to plead to the merits, and to proceed to assess damages, and decide the questions arising on that inquiry. It results from what we have said, that the Court erred in its ruling in the third bill of exceptions, and on the defendant's eighth prayer, embraced in the seventh bill of exceptions.

The jury should have been restricted to the single inquiry touching residence. If it did result in two jury trials in the same case, it would be upon two different phases of it, which could not be tried together. No inconvenience, but delay, could result from it; and that the undeniable rights of the defendant involved. It is barely possible, the same jury might be selected, but in that case, they would of necessity be sworn over again upon a different issue. The cases, where the same jury at the same time have passed upon the abatement plea, and assigned damages also, were not cases like this, wherein the plea sets up exemption by statute of the defendant from suit, in the jurisdiction where the suit was brought; and cannot be followed in this case and State. We have found no case precisely like this, and if one exists, we should be loth to follow it, in view of the meaning and object of the statute, as we understand it.

The remaining questions, which it is necessary for us to decide, depend for their solution upon the construction of Art. 75, sec. 87, of the Code of General Laws; and what kind of residence that section contemplates and requires that a defendant shall have, in a county or city, to make him amenable to civil suit therein. Numerous definitions of residence are to be found in the books, and we have been cited to a great many cases upon the subject in the books, to very few of which we shall refer; for what the word means in any particular statute, depends upon its purpose and the phraseology of the context. Each case must be decided upon the particular language of the statute, and the circumstances giving rise to the question. To fulfil the intention and requirements of some statutes, a commercial or business residence might be all the law required; whilst to gratify the intention of another statute, it may be necessary to hold residence to be more than a business residence, and to mean all that the word domicile means in its strictest and most technical application. In

the statute, we are considering the word "*lives,*" is used as synonomous with "resides;" and indicates that *more* than a bare business residence, or temporary sojourn in a place, was intended by the law. In the *Gittings and Ockerme Case*, (35 *Md.*, 169,) this Court uses the word "home," as synonymous with the word "resides," as used in this statute; thereby indicating that such was the real meaning of the statute's language. Passing upon the question, whether a motion for *non pros.* was made in time, when it was not made till the first day of the term after the return day of the writ, this Court said: "Looking to the object contemplated by this statute, that of preventing a party from being liable to suit, away from his home, and as it might be in a county remote from that of his residence, the provision should be applied in such reasonable manner, as not practically to render it useless." Here, they expressly recognize the meaning of the statute, not to be a temporary residence or a business residence, but to mean something very different, and what the Court there calls *home.* The statute contemplates the permanent fixed home of the party; whither, when the objects of temporary absence, (and it may be of business residence,) were accomplished, the person turned for social life; where his family, if he had one, usually dwelt; to which his mind turns when away, and where he has the present purpose of returning and remaining. It is not the place, where a man happens to be temporarily residing, even though it be with his family; for, a man may, for convenience sake, have a temporary residence and *quasi* home, which is not his home and residence proper; and, unless he has abandoned the latter for the former, with intention of permanently remaining from it, the newly chosen residence is not his domicile. *Dicey on Domicile, page* 76, says, "If the intention of *permanently* residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." The ques-

tion of intention, is a material ingredient. This Court said, in *Dorsey vs. Kyle*, 30 *Md.*, 512, that a man's domicile may be one place, while the actual residence was in another. Many illustrations of this might be drawn from the State officers in the various departments of the State, and United States Government. It is clear, the statute is not gratified by the defendant having less than a fixed home; which he has no present purpose of exchanging for another in a different jurisdiction; or which, if he has, he has not yet executed. It is, at least, such a residence as will draw after it a man's personal property, for the purpose of taxation; and to change it, must require the concurrence of the acts and intention requisite to change the *situs* of personal property, for the purpose of taxation. What is necessary, in such case, to effect a change of residence, this Court has determined in the case of *Stoddart vs. Ward*, 31 *Md.*, 563. There the Court decided that the intention alone to remove, though definitely formed, was insufficient; it must be carried out by actual removal. We also refer to *Lamb vs. Smythe*, 15 *Meeson & Welsby*, 433, where a like construction was given to the word *residence*, in a statute of analogous character.

Applying this view and construction of the statute to the rulings of the Court upon the various prayers submitted, it is clear that the Court erred in adopting a theory of business residence as sufficient to gratify the requirements of the statute. The first prayer of the plaintiff, (and contained in the seventh bill of exceptions) was granted by the Court. That prayer after reciting the facts necessary to constitute a *business residence*, instructed the jury if they found those facts then the defendant had a *business residence* in Baltimore City, and the plaintiff *was entitled to recover*. This was clear error. And it is not helped by the fact that it was granted in connection with other instructions given by the Court in lieu of the defendant's prayers on that subject; for, if the first paragraph of the

Court's instructions could be understood as intended to define the kind of residence necessary to maintain the suit, it is so wholly inconsistent with the first prayer of the plaintiff, it was error to grant both, for it was misleading to the jury, and they would not know which theory bound them. But the first part of the Court's instructions is followed by a paragraph indicating clearly, that if they found the facts in the first prayer, such finding would still entitle the plaintiff to recover. The Court erred in not putting distinctly before the jury the facts they were to find to constitute residence proper, and not *business residence,* which last the statute does not intend. The fourth prayer of the plaintiff which was granted was obnoxious to the same objection, that it conveyed the idea of a *business residence,* and did not define what was necessary to make a residence such as we have indicated; and left the jury too wide a field for inferences. The first prayer of the defendant was properly rejected. It did not define what was necessary to constitute residence, but left it to the jury to determine for themselves. The second, third and fourth prayers of the defendant properly laid down the law, and ought to have been granted. It is proper to remark, however, that they were constructed with reference to the case as then presented and being tried. Upon a new trial the question will first be confined to the single question of residence *vel non,* and those prayers should not conclude, as before, that the plaintiff " is not entitled to recover;" but if these facts are found " that the plaintiff cannot maintain *this* suit." The sixth prayer of the defendant was correct; and ought to have been granted; for if the admissions referred to, were as stated, admissions long before suit brought, and the jury should find that when the suit was brought the defendant had his home in Baltimore County, and not in Baltimore City, the admissions did not establish a residence in the city when the suit was brought. The fifth prayer simply asserts

Tyler *vs.* Murray.

that by pleading to the jurisdiction, the defendant had not admitted the assault or any assault, and that before the jury could find for the plaintiff, they must find some assault to have been committed. This was a proper legal proposition; but as we have before stated, the question of assault, nor the amount of damages was not then cognizable by the jury. The plea to the jurisdiction confessed nothing. If that was decided against him, he would then be entitled to demur to the *narr.* or to traverse its allegations in any way consistent with the rules of pleading applicable to such suits. And if after trial, the verdict and final judgment should be against him, he would be entitled to appeal, when alleged error in a ruling of the Court in either trial before the jury would be open for review.

Inasmuch as we have decided, that no question concerning the assault, its character or measure of redress, ought to have been allowed till the question of jurisdiction was finally settled, it is not necessary for us to decide the question of election among the assaults proved, which is presented by the fifth bill of exceptions. It is hardly possible that the same question will again arise in this case.

The only remaining question in the case is presented by the fourth exception. Having announced that the plaintiff had closed her testimony on the subject of residence, the following offer was made in writing: "The plaintiff offers by competent testimony to prove the amount of damages claimed in the *narr.*" The exception says "but the defendant objected to the proposal and offer, and moved the Court to instruct the jury that there was no legally sufficient evidence to sustain the issue joined on the part of the plaintiff." The Court overruled the objection and motion. So far as this exception presents the question whether the plaintiff should have been permitted to offer evidence of the assault and damages, we

have already expressed our opinion, that it was error to so permit, and it is not necessary to repeat. With respect to the motion that the Court take the case from the jury, on the question of residence, by instruction that there was no legally sufficient evidence to enable them to find for the plaintiff, on that issue, we cannot say there was error. There was some evidence on both sides of the question, and it was for the jury to weigh it, and find as they might think it compelled or warranted them. We will reverse and remand the cause for a new trial in accordance with the views expressed in this opinion.

*Reversed and new trial ordered.*

(Decided 19th January, 1882.)