[Cite as *State v. Wilson*, 2017-Ohio-5484.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  1-16-57

      v.

BENNY WILSON,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2015 0498

Judgment Affirmed

Date of Decision:   June 26, 2017

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Jana E. Emerick* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Benny Wilson ("Wilson"), appeals the December 2, 2016 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a controlled drug buy. In December of 2015, a confidential informant ("CI") working for the West Central Ohio Crime Task Force ("Task Force") went to a known address on West Wayne Street in Lima to meet with a person from whom he could purchase crack cocaine. Wilson was present at that address, and he offered to sell crack cocaine to the CI. Wilson was observed leaving the address on West Wayne Street and traveling to another residence at what appeared to be 402 North Collett Street. Wilson stayed at that location for a brief time and then exited and returned to the other residence on West Wayne Street from which he had come. After the CI met with police, the CI provided them with a substance that was confirmed to be cocaine. After the controlled-buy operation, police obtained a warrant to search the residence seemingly located at 402 North Collett Street, conducted that search, and found additional evidence of drug-related activity.

{¶3} On February 11, 2016, the Allen County Grand Jury indicted Wilson on: Count One of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(a), a felony of the fifth degree; Count Two of trafficking in cocaine in violation of R.C.

-2-

2925.03(A)(1), (C)(4)(a), a felony of the fifth degree; Count Three of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), a felony of the fifth degree; Count Four of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), a felony of the fifth degree; Count Five of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), a felony of the fifth degree; Count Six of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(d), a felony of the second degree; Count Seven of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(b), a felony of the third degree; and Count Eight of possession of marijuana in violation of R.C. 2925.11(A), (C)(3)(c), a felony of the fifth degree. (Doc. No. 4). Count Six included a firearm specification under R.C. 2941.141(A) alleging that Wilson had a firearm on or about his person or under his control while he committed the offense. (*Id.*). Count Six also included a firearm forfeiture specification under R.C. 2941.1417(A) alleging that Wilson is the owner and/or possessor of a gun that is contraband or is derived from the commission or facilitation of the offense or was used or intended for use in the commission or facilitation of the offense. (*Id.*). Count Six also included the same firearm forfeiture specification as to another firearm. (*Id.*). Count Six further included a money forfeiture specification under R.C. 2941.1417(A) alleging that Wilson is the owner or possessor of $2,124 in U.S. currency that was contraband or was property that was derived through the commission of the offense or was an instrumentality that the offender used or

intended for use in the commission or facilitation of the offense. (*Id.*). Counts Seven and Eight included the same specifications that were included in Count Six. (*Id.*).

{¶4} On February 18, 2016, Wilson entered written pleas of not guilty to Counts One through Seven of the indictment. (Doc. No. 8). The trial court accepted Wilson's pleas. (Doc. No. 11).

{¶5} Wilson filed a motion to suppress evidence on March 10, 2016, arguing that the affidavit in support of the warrant did not give rise to probable cause. In addition, he argued that the warrant's description of the property was not constitutionally sufficient or, if it was sufficient, it was inaccurate. (Doc. No. 16). After a hearing on August 17, 2016, the trial court overruled Wilson's motion to suppress evidence on August 30, 2016. (Doc. No. 45).

{¶6} On May 18, 2016, Wilson filed a motion to exclude the oral testimony given in support of the warrant. (Doc. No. 32). In that motion, Wilson argues that the oral testimony of Deputy Sheriff Dana Sutherland ("Sutherland") must be excluded because, under Criminal Rule 41(C)(2), if recorded testimony is to be used in support of a warrant, that testimony must be transcribed, and the transcript must be made a part of the affidavit prior to the issuance of the search warrant, or the testimony must be incorporated by reference into the affidavit to be transcribed later. (Doc. No. 32). As neither of those occurred in this case, Wilson argues that

Sutherland's testimony must be suppressed. (*Id.*). Wilson supplemented that motion on May 24, 2016. (Doc. No. 36). The State filed a response to that motion on May 26, 2016. (Doc. No. 37). Wilson filed a reply to the State's response on May 31, 2016. (Doc. No. 38). The trial court denied Wilson's motion to exclude the oral testimony on June 7, 2016. (Doc. No. 39).[1]

{¶7} Wilson appeared for a pre-trial conference and pled no contest to Count Six with the attendant specifications, as well as to Count Seven with a firearm specification. (Doc. No. 52, 53). Counts One through Five and Count Eight were dismissed in accordance with the negotiated plea agreement. (Doc. No. 53). The trial court accepted Wilson's no contest pleas and found him guilty of the offenses to which he pled no contest. (*Id.*). The trial court sentenced Wilson to five years as to Count Six and one year as to the firearm specification. (Doc. No. 57). The trial court further sentenced Wilson to two years in prison as to Count Seven, with each sentence to be served consecutively for a total of eight years of incarceration.[2] (*Id.*). The trial court further ordered that $2,124 and two firearms, all identified in specifications included in Count Six, be forfeited. (*Id.*). The trial court further

---

[1] Wilson filed a motion to reconsider the trial court's denial of his motion to exclude the oral testimony. (Doc. No. 40). The trial court overruled the motion to reconsider on June 22, 2016. (Doc. No. 41).
[2] We are aware that both Counts Six and Seven included the same firearm specifications. (Doc. No. 57). Those two specifications merged, and the trial court's sentencing entry accounted for the specification as part of Count 6. (*Id.*).

ordered that Wilson pay a total of $12,500 in fines as to Counts Six and Seven. (*Id.*).

The trial court filed its judgement entry of sentence on December 2, 2016. (*Id.*).

{¶8} Wilson filed his notice of appeal on December 2, 2016. (Doc. No. 59).

He brings two assignments of error for our review.

**Assignment of Error No. I**

**The Trial Court Erred In Denying the Defense['s] Motion To Exclude Oral Testimony From The Suppression Hearing.**

{¶9} In his first assignment of error, Wilson argues that the trial court erred in denying his motion to exclude oral testimony from the suppression hearing. Specifically, Wilson argues that, under Crim.R. 41(C)(2), the oral testimony is admissible if it is recorded either by a court reporter or by recording equipment, transcribed, and made a part of the affidavit in support of the warrant. Wilson concedes that the evidence in question was "taken down" via recording equipment and that it was transcribed by the time of the hearing on the motion to suppress evidence. However, he argues that such needed be done prior to the issuance of the warrant or, in the alternative, that the testimony needed to be incorporated by reference into the affidavit, perhaps to be transcribed at a later time. As neither of these occurred, Wilson argues that suppression was necessary.

{¶10} Evidentiary rulings are within the broad discretion of the trial court, and a reviewing court will not overturn a trial court's evidentiary ruling absent an abuse of that discretion. *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-

5908, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An "abuse of discretion" connotes more than an error in judgment; it implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶11}** Crim.R. 41(C)(2), in pertinent part, states that testimony of the sort at issue here is admissible at a hearing if "taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit." Crim.R. 41(C)(2).

**{¶12}** We begin by emphasizing that there is absolutely nothing in language of Crim.R. 41(C)(2) that requires that oral testimony be transcribed and made part of the affidavit prior to the execution the warrant. (*See id.*).

**{¶13}** Crim.R. 41's purpose is to allow review of the facts upon which the judge relied in order to issue a warrant. *State v. Dreve*, 10th Dist. Franklin No. 77AP-383, 1977 WL 200660, *4 (Dec. 13, 1977). The rule does not require that the oral testimony be transcribed immediately and made a part of the affidavit prior to the issuance of the warrant. *Id.* Indeed, such a requirement would unduly delay the issuance of many warrants. *Id.* It is enough if the oral testimony is transcribed and made a part of the affidavit prior to the suppression hearing. *Id.*

**{¶14}** In *State v. Shingles*, the Ninth District Court of Appeals addressed a situation in which the trial court suppressed evidence gathered via a search warrant that had been sworn to before a notary public rather than a judge. *State v. Shingles*,

46 Ohio App.2d 1, 2 (9th Dist.1974). Though the court in *Shingles* held the warrant to be invalid, it distinguished the fatal defect in that warrant from minor defects not large enough to require suppression. *Id.* at 3 (noting that a judge's failure to affix his signature to a warrant is a "ministerial act" that would not cause the warrant to fail). In elaborating upon the sorts of defects considered "ministerial," the court in *Shingles* specifically held that "If all that remained to be done would be the transcription of the recorded testimony, we would call it a 'ministerial function,' and permit it to be done." *Id.*

{¶15} Based on the principles above, we conclude that the trial court did not act arbitrarily, unreasonably, or unconscionably in denying Wilson's motion to exclude the oral testimony at issue. Nothing in the language of the rule requires that transcription and attachment occur prior to the search, and *Dreve* dismisses the very interpretation that Wilson urges is the proper one specifically because that interpretation would be administratively unworkable and would delay the issuance of warrants. Wilson concedes in his brief that the "testimony was transcribed by the time of the hearing" on the motion to suppress evidence. (Appellant's Brief at 6). That is sufficient.

{¶16} For the reasons explained above, Wilson's first assignment of error is overruled.

**Assignment of Error No. II**

**The Trial Court Erred In Denying The Defense['s] Motion To Suppress.**

{¶17} In his second assignment of error, Wilson argues that the trial court erred in denying his motion to suppress evidence. Specifically, Wilson argues that the warrant was defective because it did not accurately and specifically indicate which residence within the multi-unit building was to be searched. Wilson also argues that the facts upon which the warrant was issued do not give rise to probable cause.

{¶18} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶19} When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, our duty is simply to "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus, citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317 (1983). We must not conduct "a de novo determination as to whether the affidavit contains sufficient probable cause upon which the court would issue the search warrant," but rather accord great deference to the trial court's determination of probable cause and resolve marginal cases in favor of upholding the warrant. *George* at paragraph two of the syllabus. We recognize that the duty of the issuing official is simply to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 329, citing *Gates* at 238-239.

{¶20} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals against unreasonable searches and seizures by the government, and they protect privacy interests where an individual has a reasonable expectation of privacy. *State v. Fielding*, 10th Dist. Franklin Nos. 13AP-654 and 13AP-655, 2014-Ohio-3105, ¶ 15, quoting *Smith v.*

*Maryland*, 442 U.S. 735, 740, 99S.Ct. 2577 (1979). An expectation of privacy is protected where an individual has manifested a subjective expectation of privacy and that expectation is one that society recognizes as reasonable. *Id.*, citing *Smith* at 740, citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). While the Fourth Amendment does not specifically provide that unlawful searches and seizures will result in the suppression of ill-gotten evidence, the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶21} The exclusionary rule should not bar the use of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate even if that warrant is ultimately found to be unsupported by probable cause. *Id.* at 325, citing *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). Exclusion remains proper, however, where the magistrate or judge who issued the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false if not for reckless disregard of the truth, where the magistrate wholly abandoned his judicial function in issuing the warrant, where the affidavit is "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable," or where the warrant is so

facially deficient that officers cannot reasonably presume its validity. *George* at 331, citing *Leon* at 923.

**{¶22}** The standard that must be applied in determining the sufficiency of a warrant's identification of the place to be searched is that the description must be such that "the officer with a search warrant can with reasonable effort ascertain the identity of the place intended." *State v. Pruitt*, 97 Ohio App.3d 258, 261 (11th Dist.1994) quoting *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414 (1925). The determinative factor is not whether the description is technically accurate in every detail; rather, it is whether the description enables the executing officer to locate the premises with reasonable effort, as well as whether there is any reasonable probability that a premises other than the one intended might be searched by mistake. *Id.* at 261-262.

**{¶23}** In this case, the hearing pertinent to Wilson's motion to suppress evidence took place on August 17, 2016. (Aug. 17, 2016 Tr. at 1). At that hearing, the State called Sutherland to the stand. (*Id.* at 8). Sutherland testified that police began an investigation into the property at the corner of West Wayne Street and North Collett Street in December of 2015 because the Task Force carried out a controlled drug buy using a CI. (*Id.* at 10). During that controlled buy, the Task Force observed the CI as he traveled to a known address on West Wayne Street to meet with a person from whom he could purchase crack cocaine. (*Id.* at 10).

Sutherland testified that Wilson was at that known address and offered to make the sale. (*Id.*). Sutherland testified that police observed Wilson leaving the house and walking to 402 North Collett Street, entering the building through the door facing "directly into the intersection under a covered porch with cedar siding." (*Id.*). Sutherland asserted that Wilson stayed at that location for a brief time before leaving and returning to the place from which he came. (*Id.* at 11). Sutherland testified that, when the CI met with police after the controlled buy, the CI provided them with a substance that was confirmed to be cocaine. (*Id.*).

{¶24} Sutherland next testified that, after the controlled buy, he photographed the numbers "402" on the west side of the property and subsequently determined, after examining the Allen County Auditor's records, that the property at the corner of Wayne Street and Collett Street is 402 North Collett Street—a multi-unit structure. (*Id.* at 12). Sutherland then testified that he and Investigator Pugh ("Pugh") drove to the house and photographed it from both Wayne Street and Collett Street. (*Id.* at 13). He testified that no addresses were marked on the cedar siding under the covered porch. (*Id.*). Sutherland identified State's Exhibit 3 as a photo of the west side of the property. (*Id.* at 14); (State's Ex. 3). He identified State's Exhibit 4 as depicting the rear portion of the property. (Aug. 17, 2016 Tr. at 14); (State's Ex 4). Sutherland further testified that State's Exhibit 5 depicts the door

through which Wilson entered and later exited the residence. (Aug. 17, 2016 Tr. at 16); (State's Ex. 5).

{¶25} Sutherland testified that he then prepared an affidavit and a search warrant for 402 North Collett Street, both of which he presented to a judge. (Aug. 17, 2016 Tr. at 19). Sutherland identified State's Exhibit 1 as the affidavit for the search warrant. (*Id.* at 20); (State's Ex. 1). That affidavit generally contains the following information:

{¶26} The affiant, a Deputy Sheriff with the Allen County Sheriff's Office, had been so employed since 2003. (State's Ex. 1). He was assigned to the Task Force and had training related to drug trafficking and manufacturing, in addition to which he had participated in controlled drug buys. A CI indicated that he could purchase cocaine from persons in Lima and agreed to assist the Task Force by participating in controlled drug buys. The same CI had participated in previous controlled drug buys and had provided police with reliable information. During the week of December 14, 2015, the Task Force carried out a controlled drug buy according to its standard procedure. The CI traveled to a known address on West Wayne Street to purchase cocaine. Though the original suspect was not present, a then-unknown African-American male was present and offered to sell cocaine to the CI. This individual then exited the address on West Wayne Street and walked to another property at 402 North Collet Street, which he entered. The individual

stayed at that location briefly and then exited before returning to the address from which he had come and then providing the CI with cocaine. (*Id.*).

**{¶27}** Sutherland further testified that, in addition to the information in State's Exhibit 1, he also presented the issuing judge with recorded testimony to support the warrant. (Aug. 17, 2016 Tr. at 20). He identified State's Exhibit 2 as an audio recording of the hearing at which he provided the judge with additional information. (*Id.* at 21); (State's Ex. 2). That recording was then played for the trial court. (Aug. 17, 2016 Tr. at 24). Sutherland identified State's Exhibit 9 as a transcript accurately reflecting the hearing recorded on State's Exhibit 2. (*Id.* at 24-25).[3] After hearing Sutherland's testimony, the judge found probable cause. (*Id.*).

**{¶28}** Sutherland, at the August 17, 2016 hearing, went on to testify that the warrant identified the property to be searched as "the property located at 402 N. Collett Street, Lima" and that the warrant later indicated that "the property is more specifically described as a yellow two (2) story multifamily dwelling with white trim," as well as a "black asphalt roof located in the northeast corner of W. Wayne Street and N. Collett Street." The warrant also described the property door as "located on a covered porch with cedar siding facing directly into the intersection." (Aug. 17, 2016 Tr. at 25); (State's Ex. 1).

---

[3] The testimony taken during that hearing is duplicative of other testimony we discuss. (*See* State's Ex. 9).

**{¶29}** Sutherland asserted that, once he obtained a warrant but prior to conducting the search, he met with the SWAT team and showed SWAT team members pictures of the door through which they should enter the property—a door on a covered porch with cedar siding. (Aug. 17, 2016 Tr. at 27). Sutherland then accompanied the SWAT team to execute the warrant. (*Id.* at 30). He testified that he observed the police go on to the front porch area and enter through the door that was described to them. (*Id.* at 30). Sutherland averred that police were able to properly execute the warrant based on the property description in the warrant. (*Id.* at 31). He asserted that they did not enter any residence other than the one intended. (*Id.*).

**{¶30}** Sutherland testified that, after the SWAT team had entered the residence, he photographed the entry door and, in doing so, he saw the number "864" above a mailbox. (*Id.*). This was the first indication that the address of the property was anything other than 402 North Collett Street, as police believed. (*Id.* at 32). Sutherland testified that further investigation revealed that the address of the location was, in fact, 864 West Wayne Street rather than 402 North Collett Street. (*Id.* at 32). Sutherland testified that he never believed that there was any probability that the wrong residence would be searched, and he emphasized again that the correct residence was the only one searched. (*Id.* at 33).

**{¶31}** Wilson argues that the property description in the warrant was insufficient. We disagree. In *State v. Pruitt*, the Eleventh District Court of Appeals addressed a situation in which police had a search warrant permitting them to search a premises described as:

> 2101 Westlawn S.W., a multi-unit apartment, single level yellow in color. The unit is the second apartment from a large parking lot located on the east side of Delaware S.W. The unit is marked 2101 on the front of the building. Also the unit is North of the large parking lot.

*Pruitt* at 258. The defendant argued that this description was insufficient because it named the wrong street. *Id.* at 260. The court ultimately found that the description of the property was adequate, noting that the house number was correct even though the street name was not and that the architectural description of the premises was accurate. *Id.* at 262. The court also found it significant that, because the same officer who applied for the warrant also executed it, the chance of a mistaken search was unlikely. *Id.*

**{¶32}** Facts similar to those in *Pruitt* exist here. The address in this case was incorrect; however, the architectural description of the premises was accurate, as was the description of their physical location. Further, because the same officer who applied for the warrant was present for the execution of it, and he showed the

SWAT team a photo of the entrance and specifically advised them how to enter the residence to conduct the search, a search of the wrong location was rendered highly unlikely. Police searched only the location they intended to search.

{¶33} Wilson argues that the affidavit in support of the warrant does not give rise to probable cause. We disagree. In *State v. Metzger*, we were presented with a set of facts in which controlled buys were conducted at a home on South Canal Street in Delphos, Ohio. *State v. Metzger*, 3d Dist. Van Wert Nos. 15-05-15 and 15-05-17, 2006-Ohio-5161, ¶ 1-3. The CI located a suspected drug dealer and gave him money with the understanding that the dealer would leave the residence, procure the drugs, and return with them. *Id.* at ¶ 3. The individual left his residence and traveled to the defendant's home on South Canal Street, remained there for approximately five minutes, and then returned with the drugs. *Id.* When Metzger attacked the affidavit in support of the warrant to search his home, we upheld the warrant, noting that the record indicated that confidential informants had conducted controlled buys from a man who had traveled to the Canal Street address to obtain drugs. *Id.* at ¶ 29. We also noted that the drug seller was seen entering the residence for which the warrant was issued. *Id.*

{¶34} Similar facts are now before us. The CI met Wilson, and Wilson traveled to a house on the corner of West Wayne Street and North Collett Street, stayed there for a brief time, and returned with drugs. The record establishes that

Wilson entered the very place police searched. Based on *Metzger*, we conclude that the warrant at issue here was supported by probable cause.

{¶35} For the reasons explained above, Wilson's second assignment of error is overruled.

{¶36} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**