[Cite as *State v. Whittle*, 2024-Ohio-1023.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230288 |
|  |  | C-230318 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1900989 |
| vs. | : |  |
|  |  | *O P I N I O N.* |
| ELTON WHITTLE, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 20, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Robinson & Brandt, P.S.C.,* and *Jeffrey M. Brandt*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   Defendant-appellant Elton Whittle was originally indicted on one count of trafficking in heroin, one count of possession of heroin, three counts of trafficking in a fentanyl-related compound, three counts of possession of a fentanyl-related compound, one count of trafficking in cocaine, one count of possession of cocaine, one count of trafficking in drugs, and one count of possession of drugs.  A jury returned guilty verdicts on all 12 counts.

{¶2}   At the sentencing hearing, the trial court and the parties indicated that an 11-year sentence was mandatory.  The court sentenced Whittle to 11 years in prison on count three, trafficking in a fentanyl-related compound.  For reasons not apparent in the record, it then merged all the other counts into count three.  These appeals followed.

### *Factual Background*

{¶3}   In July of 2017, Officer Scott Brians of the Cincinnati Police Department received information from security officers at Cincinnati Children's Hospital Medical Center ("Children's Hospital") about drug sales occurring on Winslow Avenue adjacent to the hospital's parking garage.  They reported that a black man was conducting hand-to-hand drug transactions out of a Chevrolet Malibu that was parked on Winslow.  They also provided Officer Brians with the license plate number of that car.  After checking with the Bureau of Motor Vehicles ("BMV"), he found that it was registered to 2840 Winslow Avenue, Apartment B.

{¶4}   In early August 2017, Officer Brians met with a reliable, confidential informant identified as "CI#1."  CI#1 told him that the suspect in the ongoing drug sales went by the street name "E" and used a specific telephone number.  CI#1 also said that E used a gold Dodge Durango when making the sales.  Officer Brians located

a vehicle matching that description parked on Winslow Avenue and obtained its license plate number. After checking that license plate with the BMV, he learned that it was also registered to 2840 Winslow Avenue, Apartment B. A check of the Regional Crime Information Center database revealed that Whittle, who had numerous drug-related arrests, was attached to that license plate number. After seeing a BMV photo of Whittle, CI#1 confirmed that Whittle was the person he knew as E, who was selling drugs.

{¶5} On August 25, 2017, officers met with another reliable confidential informant identified as "CI#3" to arrange a controlled purchase of drugs from E. Officer Brians monitored a call from CI#3 to E using the phone number he had obtained from CI#1. E directed CI#3 to meet him at a gas station at the corner of Reading Road and East Martin Luther King Drive. Officers saw Whittle arrive in a gold Dodge Durango with the previously identified license plate number. Whittle got out of the vehicle, approached CI#3, and engaged in a hand-to-hand transaction. Subsequently, the officers met with CI#3 and recovered the drugs that CI#3 had purchased, which were later identified as a heroin/fentanyl mix.

{¶6} On September 5, 2017, the officers arranged another controlled purchase. Officer Brians monitored a call from CI#3 to Whittle to arrange a purchase of heroin/fentanyl. Whittle directed CI#3 to go to Winslow Avenue. At that meeting, the officers saw Whittle go to a side door at 2840 Winslow Avenue, retrieve something from inside the door, approach CI#3, and engage in a hand-to-hand transaction. The officers recovered the drugs purchased by CI#3, which were later identified to be a heroin/fentanyl mix.

{¶7} On October 30, 2017, a security officer at Children's Hospital again called police to report ongoing drug sales at 2840 Winslow Avenue and described the seller. That description was consistent with the police officers' observations of

Whittle. The security officer also stated that the seller lived in an apartment inside 2840 Winslow Avenue and drove a gold Dodge Durango, with the previously identified license plate, which was parked in the driveway of 2840 Winslow Avenue.

{¶8} Brians stated that the investigation of Whittle's drug sales was put on hold for several months when higher priority cases arose. On March 28, 2018, officers monitored a phone call between another confidential informant identified as "CI#2" at the same phone number as the previous buys. Whittle directed CI#2 to the gas station at the corner of Reading Road and Martin Luther King Drive. Whittle drove up in the gold Dodge Durango with the previously identified license plate. He got out, approached CI#2, and engaged in a hand-to-hand drug transaction. Once again, the officers recovered drugs later identified as a heroin-fentanyl mix. When shown a picture of Whittle, CI#2 identified Whittle as the person who had sold the drugs.

{¶9} On February 6, 2019, a source of information identified as "SI#1" informed officers that a trafficker known as E, using the same phone number, sold narcotics out of 2840 Winslow Avenue, Apartment B. SI#1 also told them that E was driving a silver Toyota Avalon with tinted windows. When shown a photo of Whittle, SI#1 identified Whittle as E.

{¶10} Officers conducted surveillance at 2840 Winslow Avenue and saw a silver Toyota Avalon with tinted windows parked in the driveway. They saw Whittle come out of the building, get into the Toyota and drive away. A short time later, he returned and used keys to enter the building. A BMV check revealed that the Toyota was registered to Whittle at the Winslow Avenue address. On February 20, 2019, the officers saw Whittle get out of the Toyota in the parking lot of a drive-through, engage in a hand-to-hand transaction, and then get back into the vehicle.

{¶11} Based on the information the officers had obtained, Officer Brians obtained a search warrant to search the premises at 2840 Winslow Avenue, which had

four apartments, two on each floor. The warrant stated that apartment B was on the top northwest corner. It also allowed the officers to search the Dodge Durango and the Toyota Avalon.

{¶12} Police officers executed the warrant on February 22, 2019. In the apartment at the northwest corner of the building, they found mail with Whittle's name and address on it, fentanyl packaged for sale, packaging material, "ripped up" lottery tickets, numerous handguns and ammunition, seven cell phones, cash, pills, heroin, marijuana and digital scales. In the basement's common area, officers found more torn lottery tickets and torn plastic baggies, both of which are commonly used to package drugs. They also found a digital scale, a piece of mail and a traffic ticket with Whittle's name on them, and bags of heroin and fentanyl on the top of a bookshelf. A drug dog alerted to an unlocked storage unit marked "C," the door of which was opened. Inside, the officers recovered heroin, fentanyl from the pocket of a gray and black shirt, a 12-gauge shotgun, and several handguns.

{¶13} Whittle was indicted on one count of trafficking in heroin, one count of possession of heroin, three counts of trafficking in a fentanyl-related compound, three counts of possession of a fentanyl-related compound, one count of trafficking in cocaine, one count of possession of cocaine, one count of trafficking in drugs, and one count of possession of drugs. He subsequently filed a motion to suppress, in which he alleged the search was improper because the warrant allowed police to search apartment B, but they had actually searched apartment D, and the warrant did not allow the officers to search in the basement anywhere but the storage bin for apartment B. The trial court overruled the motion.

{¶14} Following a jury trial, Whittle was found guilty of all 12 counts charged in the indictment. The trial court sentenced him on count three, which was trafficking in a fentanyl-related compound under R.C. 2925.03(A)(2), and merged the other

counts. As required by R.C. 2925.03(C)(9)(g) and 2929.14(A)(1)(b), the trial court sentenced Whittle to a mandatory 11 years in prison. This appeal followed.

### *Search-Warrant Issues*

**{¶15}** Whittle presents six assignments of error for review. In his first assignment of error, he contends that the trial court erred by failing to grant his motion to suppress. He argues that the search warrant failed to accurately and particularly describe the residence to be searched, no probable cause existed that evidence would likely be found in the residence to be searched, and that the officers failed to act in good faith by entering the incorrect residence rather than seeking a new and accurate warrant once they learned that the description of the property was inaccurate. This assignment of error is not well taken.

**{¶16}** Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, ¶ 11.

**{¶17}** To establish probable cause to issue a search warrant, the supporting affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched. *Lang* at ¶ 12; *State v. Martin*, 2021-Ohio-2599, 175 N.E.3d 1004, ¶ 11 (1st Dist.). Probable cause exists when a reasonably prudent person would believe that a fair probability exists that the place to be searched contains evidence of a crime. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus; *Lang* at ¶ 12. "[I]t is clear that 'only the probability, and not prima facie showing, of criminal activity is the

6

standard of probable cause.' " (Emphasis deleted.) *George* at 329, quoting *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶18} A reviewing court, which includes a trial court ruling on a motion to suppress, as well as an appellate court, must give great deference to the magistrate's probable-cause determination. *George* at 329-330; *Lang* at ¶ 13. "[A]fter-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review." *George* at 329, quoting *Gates* at 236. Our duty is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. *See George* at paragraph two of the syllabus; *State v. German*, 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, ¶ 12. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *George* at paragraph two of the syllabus; *Lang* at ¶ 13.

{¶19} A search warrant and its supporting affidavit must particularly describe the place to be searched. Crim.R. 41(C); *State v. Burton*, 1st Dist. Hamilton No. C-080173, 2009-Ohio-871, ¶ 16. Because a search warrant and supporting affidavit usually contain more information than just an address to identify the place to be searched, a search warrant is not necessarily invalid if it describes the property to be searched with an incorrect address. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 25 (10th Dist.); *Burton* at ¶ 16. To determine whether a property description is constitutionally valid, the trial court must determine whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort and whether there is a reasonable probability that another premises might be mistakenly searched. *Gravely* at ¶ 25.

{¶20} As to the place to be searched, the warrant stated:

7

2840 Winslow Avenue #B, Cincinnati Ohio, 45206. Further described as a two story red brick multi-family building with red trim Entry to the building is thru [sic] a white steel door on the west side of the building. Entry to apartment B will be thru [sic] a brown wooden door with the letter B affixed to it located on the second floor, North West corner.

{¶21} At the hearing on the motion to suppress, Officer Brians testified that before the execution of the search warrant, he knew that Whittle's mother lived in the bottom right apartment, Whittle's father lived in the top right apartment, an unknown person lived in the bottom left apartment, and Whittle lived in the top left apartment, which was the northwest corner of the building. He identified apartment B in his affidavit because he relied on information from a confidential informant who told him that the apartment letter was B, that it had a brown door, and that it was located on the northwest corner of the second floor. He conducted BMV checks to rule out the other apartments.

{¶22} When Officer Brians was asked if he searched apartment B, he replied, "The top, left apartment, yes." When asked if he had checked the letters on the doors, he said that he had not because SWAT officers had already cleared the apartment that he described as "the goal apartment or the objective apartment [that] was the top, left apartment in the northwest corner." When he entered the building, he did not look at any of the apartments on the first floor and did not see any letters on the doors of either of the two apartments on the second floor.

{¶23} The state submitted into evidence a photograph of the door taken at the time of the search. It shows a brown door with no letter on it. Officer Brians stated that the picture depicted the door to the apartment that was searched. On cross-examination, defense counsel showed him a photo taken months after the execution of the warrant. Officer Brians acknowledged that the apartment on the top northwest

corner of the building was not apartment B. He added, "The top northwest corner is what I considered to be apartment B when I wrote the warrant."

{¶24} Officer Brians also acknowledged that the photo depicted apartment B as being on the first floor, but he said that "I don't know that it was that way at the time of the warrant." He also agreed with the statement that "[f]or all we know, this 'B' could have been placed there by Mr. Whittle or someone else after the fact."

{¶25} Although the warrant in this case mistakenly listed apartment B as the place to be searched, the warrant and the testimony at the suppression hearing clearly showed that the premises to be searched was on the top floor of the northwest corner of the building, and that was the apartment that the police officers searched. Inside that apartment, they found mail with Whittle's name on it. The information known to the officers as set forth in the warrant was sufficient to locate the apartment with reasonable efforts.

{¶26} Further, the house had been under surveillance before the search. The officer who drafted the affidavit used to obtain the warrant also participated in the execution of the warrant, which diminishes the chances of a mistaken search. *See Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.3d 136, at ¶ 27. Under the circumstances, we cannot hold that the trial court erred in denying Whittle's motion to suppress. Therefore, we overrule his first assignment of error.

{¶27} In his second assignment of error, Whittle contends that trial court erred in failing to suppress evidence "as a result of an invalid and otherwise flawed search warrant." He argues that the search warrant was invalid because the affidavit in support of the warrant did not have a notary seal. This assignment is not well taken

{¶28} R.C. 2933.23 governs the affidavit supporting a search warrant. It provides,

A search warrant shall not be issued until there is filed with the judge or magistrate an affidavit that particularly describes the place to be searched, names or describes the person to be searched, and names or describes the property to be searched for and seized; that states substantially that the offense in relation to the property and that the affiant believes and has good cause to believe that the property is concealed at the place or on the person; and that states the facts upon which the affiant's belief is based.

{¶29} Similarly, Crim.R. 41(C)(1) provides,

A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.

{¶30} The affidavit supporting the warrant meets those requirements. Neither the statute nor the rule requires the affidavit to be notarized. Whittle acknowledges that the statute and the rule do not require a notary seal. Nevertheless, he cites R.C. 147.04, which requires a notary public to obtain a seal prior to the discharge of his or her official duties, and R.C. 147.542, the statute setting forth notarial certificate requirements. He argues that these statutory provisions apply because under the rules of statutory construction a more specific statute controls over

a more general statute. Therefore, the more specific provisions of R.C. 147.542 override the more general provisions of R.C. 2933.23 and Crim.R. 41. *See* R.C. 1.51.

**{¶31}** But Whittle has it backwards. R.C. 2933.23 and Crim.R. 41 codify the specific requirements for search warrants and the affidavits supporting those warrants, while R.C. Chapter 147 applies to notary publics and their certifications of documents generally. Therefore, R.C. 2933.23 and Crim.R. 41 supersede R.C. Chapter 147. *See State v. Littlejohn*, 7th Dist. Mahoning No. 11 MA 106, 2012-Ohio-4554, ¶ 16-17.

**{¶32}** Moreover, generally, suppression of evidence is only warranted for rule violations of "constitutional magnitude." *State v. Dibble*, 159 Ohio St.3d 322, 2020-Ohio-546, 150 N.E.3d 912, ¶ 33. Ministerial acts should not "cause a warrant to fail." *State v. Wilson*, 3d Dist. Allen No. 1-16-57, 2017-Ohio-5484, ¶ 14; *State v. Shingles*, 46 Ohio App.2d 1, 3, 345 N.E.2d 614 (3d Dist.1974). Even if a notarization of the warrant was required, the affidavit was sworn to in the presence of a judge, and the failure to have it notarized would not render it inadmissible by the Fourth Amendment. *See State v. Smith*, 7th Dist. Mahoning No. 99 CA 256, 2001 Ohio App. LEXIS 2976, 9-10 (June 26, 2001). Consequently, we overrule Whittle's second assignment of error.

### *Other-Acts Evidence*

**{¶33}** In his third assignment of error, Whittle contends that the trial court erred in admitting evidence of the five controlled buys as he was not charged with any offenses as a result of those buys. He argues that it was improper character evidence admitted in violation of Evid.R. 404(B). This assignment of error is not well taken.

**{¶34}** The state argues and this court has held that Evid.R. 404(B) does not apply to acts that are "not independent" of the charged crime. *State v. David*, 1st Dist.

11

Hamilton No. C-210227, 2021-Ohio-4004, ¶ 14.  Other-acts evidence is admissible when the other acts demonstrate the "setting" of a case and are part of the "immediate background" of the charged offenses.  *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 57;  *State v. Fritsch*, 1st Dist. Hamilton No. C-220570, 2023-Ohio-2676, ¶ 13; *State v. Mincy*, 2023-Ohio-472, 208 N.E.3d 1043, ¶ 19 (1st Dist.); *David* at ¶ 16; *State v. Johnson*, 1st Dist. Hamilton No. C-170371, 2018-Ohio-4131, ¶ 30.

{**¶35**} Whittle did not object when evidence of the controlled buys was presented at trial.  The failure to object precludes him from raising the issue on appeal unless it rises to the level of plain error.  *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983); *State v. Thomas* 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 22.  An alleged error does not rise to the level of plain error unless, but for the error, the outcome of the trial would have been otherwise.  *State v. Wickline*, 50 Ohio St.3d 114, 119-120, 552 N.E.2d 913 (1990); *State v. Baldwin*, 1st Dist. Hamilton No. C-081237, 2009-Ohio-5348, ¶ 6.

{**¶36**} Whittle also argues that the trial court should have excluded the evidence of the controlled buys under Evid.R. 403(A), which provides that relevant evidence is not admissible if its "probative value is substantially outweighed by the danger of unfair prejudice."  We do not address whether the trial court erred in admitting other-acts evidence under Evid.R. 404(B) or Evid.R. 403(A).  Given the overwhelming evidence of Whittle's guilt, we cannot hold that but for the admission of the other-acts evidence, the outcome of the trial would have been otherwise.  Therefore, any error did not rise to the level of plain error.  *See Wickline*, 50 Ohio St.3d at 119-120, 552 N.E.2d 913; *Baldwin*, 1st Dist. Hamilton No. C-081237, 2009-Ohio-5348, at ¶ 6.  Consequently, we overrule Whittle's third assignment of error.

### *Constructive Possession*

**{¶37}** In his fourth assignment of error, Whittle contends that "the jury verdicts finding Whittle guilty of all 12 offenses" were against the manifest weight of the evidence. He argues that the state failed to present competent, credible evidence that Whittle possessed the items found in the common areas of the basement. This assignment of error is not well taken.

**{¶38}** A conviction requires a finding of guilt and a sentence. *State v. Phillips*, 1st Dist. Hamilton Nos. C-150376 and C-150378, 2016-Ohio-4672, ¶ 35. Whittle was only convicted of one count of trafficking in a fentanyl-related compound under R.C. 2925.03(A)(2). Therefore, we address this assignment of error only as it relates to that conviction.

**{¶39}** R.C. 2925.01(K) provides that possession "means having control over a thing or a substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." A defendant's possession of a thing or substance may be actual or constructive. *State v. Williams*, 1st Dist. Hamilton No. C-230145, 2023-Ohio-4667, ¶ 12. Courts have defined constructive possession as "knowingly exercising dominion and control over an object, even though the object is not within the person's immediate physical possession." *State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, ¶ 32, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The person must be "conscious of the presence of the object." *Hankerson* at 91. The state may prove dominion and control and consciousness of the object by circumstantial evidence. *Williams* at ¶ 15; *English* at ¶ 32.

**{¶40}** In the common area of the basement, the police officers found a trash can filled with "tear-offs" from plastic baggies, which was indicative of preparing

drugs for sale, and more lottery tickets, the same as were recovered from the apartment. In boxes, they found torn papers with Whittle's name and address on them, torn lottery tickets, and torn baggies. On a shelving unit, the officers found more personal documents with Whittle's name and address on them. They found large baggies of heroin and fentanyl sitting on a bookshelf.

{¶41} In the storage bin marked "C," they found a gray and black shirt that had a bag of drugs in its pocket. They found a shotgun, and in a hole in the ceiling, they found several handguns. They found digital scales, commonly used to weigh drugs for sale, and bags with residual amounts of heroin, fentanyl, and other drugs.

{¶42} Given the presence of identifying documents and other of Whittle's personal effects in the apartment where drugs were packaged for sale and other documents and personal effects in the basement, the circumstantial evidence was sufficient to allow the jury to infer that Whittle had constructive possession of the fentanyl found in the basement. Though Whittle denied knowing about any of the drugs in the basement, the jury did not believe him. Matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *Johnson*, 1st Dist. Hamilton No. C-170371, 2018-Ohio-4131, at ¶ 57.

{¶43} After reviewing the record, we cannot hold that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Whittle's conviction and order a new trial. Therefore, the conviction was not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Jillson*, 1st Dist. Hamilton No. C-110430, 2012-Ohio-10343, ¶ 76. We overrule Whittle's fourth assignment of error.

### Right to Counsel

{¶44} In his fifth assignment of error, Whittle contends that the trial court erred in failing to grant his request to fire counsel or to at least investigate whether new counsel was appropriate or whether he should be permitted to represent himself. This assignment of error is not well taken.

{¶45} The record shows that Whittle changed counsel numerous times over the course of the proceedings. At the sentencing hearing, Whittle announced that he wanted to fire his counsel. He stated, "I asked for a few things that I needed and he didn't get it." The court replied, "No. He is with you through this case * * *." Whittle added that he wanted to fire his counsel before trial, but that the court "didn't give me a chance to," to which the court replied that Whittle's assertion was false. As the court started to proceed on the sentencing hearing, Whittle asked, "I can't fire my lawyer?" To which the court replied, "Not at a sentencing on a case where the sentence is predetermined by law."

{¶46} The Sixth Amendment right to counsel, implicitly embodies a "correlative right to dispense with a lawyer's help." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). A defendant in a criminal trial has an independent constitutional right to represent himself at trial without counsel when the defendant knowingly, voluntarily chooses to waive counsel. *Martin* at ¶ 24; *State v. Jackson*, 1st Dist. Hamilton No. C-180160, 2019-Ohio-2933, ¶ 5.

{¶47} A criminal defendant must "unequivocally and explicitly invoke" the right to self-representation. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 29. The record does not show that Whittle unequivocally invoked his right to self-representation. Further, the request to waive counsel must be timely

15

made. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 76-77; *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 37-40. A motion to waive counsel at the sentencing hearing is not timely. Therefore, the trial court did not err in refusing to allow Whittle to represent himself and proceed pro se at the sentencing hearing.

{¶48} Further, the trial court did not err in failing to investigate whether new counsel should be appointed. An indigent defendant has the right to competent, effective representation, but not to have the counsel of his or her choice. *State v. Newman*, 6th Dist. Wood No. WD-15-031, 2016-Ohio-2667, ¶ 3; *State v. Cobb*, 9th Dist. Summit No. 26847, 2014-Ohio-1923, ¶ 17; *State v. Andrews*, 1st Dist. Hamilton No. C-110735, 2012-Ohio-4664, ¶ 21. "[A] an indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001), quoting *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999). We review the trial court's decision to deny a motion for substitute counsel under an abuse-of-discretion standard. *Id.* at 523; *State v. McNeil*, 83 Ohio St.3d 438, 452, 700 N.E.2d 596 (1998).

{¶49} The record shows that Whittle had changed attorneys several times, and the request to fire his attorney was not timely made. The record does not support his assertion that he wanted to fire counsel before the trial. Under the circumstances, we cannot hold that the trial court abused its discretion in denying Whittle's motion. Further, even if the court had erred, the court had no choice but to impose a mandatory prison term. *See* R.C. 2925.03(C)(9)(g) and 2929.14(A)(1)(b). Therefore, any error was harmless. *See* Crim.R. 52(A). We overrule Whittle's fifth assignment of error.

**{¶50}** Finally, in his sixth assignment of error, Whittle contends that he was denied the effective assistance of counsel. He argues generally that counsel failed to object to improper testimony. He claims that he was prejudiced because an appellate court could only review it for plain error. This assignment of error is not well taken.

**{¶51}** A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988); *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 36. To sustain a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hackney* at ¶ 36. Counsel's failure to object is not, by itself, enough to sustain a claim for ineffective assistance of counsel. *Hackney* at ¶ 39.

**{¶52}** Whittle fails to specify where counsel was ineffective for failing to object. The appellant bears the burden to show error by reference to the record. To be considered on appeal, errors by a trial court must be argued and supported by legal authority and citation to the record. App.R. 16(A); *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 24. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Brown* at ¶ 24, quoting *State v. Dutiel*, 5th Dist. Perry No. 2012-CA-11, 2012-Ohio-5349, ¶ 38. Therefore, we decline to address Whittle's argument. *See Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, at ¶ 77-79. Consequently, we overrule Whittle's sixth assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its own entry this date.